## BROWN vs. HOBURGER.

Dogs, in general, have no fixed or general market value. If there is any particular breed or class of dogs which is generally or usually sold in market, and have established some fixed or general market value, opinions of witnesses are as competent to fix the value of such breed or class as that of any other marketable property.

Opinions as to value, founded on the mere taste or fancy of the owner, or the witness, are not competent. And for this reason opinions in regard to the value of dogs which have no standard or marketable value, being necessarily fanciful, are not competent.

In order to render opinions as to the value of a dog competent evidence, it should first be shown that the dog in question is a marketable animal, either belonging to some peculiar breed, or possessing some peculiar qualities which make him an animal usually vendible at some proximately regular price.

The killing of a dog while in the act of chasing and worrying sheep, being a justifiable act, no recovery can be had for its value.

A new trial will never be granted where it is apparent that the error did not, and could not, affect the rights of the complaining party.

THIS action was commenced before M. L. Taylor, a justice of the peace of the town of Brighton, in the county of Monroe, to recover the sum of seventy-five dollars, the alleged value of the plaintiff's farm dog, which, as was averred in the complaint, the defendant by himself or his agent, willfully and without cause, shot and killed, on or about the 19th day of November, 1867, in the town of Chili, in said county.

The defendant, for answer to the complaint, denied each and every allegation thereof, and for a further defense alleged that the said dog, at the time of the killing thereof, was in the act of chasing and worrying the defendant's sheep, upon his premises, and thereby claimed to justify the killing. And further, that the dog was not the subject of absolute property.

Issue was duly joined and the said action tried before said justice and a jury, January 27th, 1868, and a verdict rendered in favor of the plaintiff for fifty dollars damages, and judgment was thereupon duly perfected in favor of the plaintiff therefor, beside costs. From such judgment

the defendant duly, and on the 4th day of February, 1868, appealed to the county court of Monroe county, and claimed a new trial of said action. On the 20th day of May, 1868, the trial of the said action was commenced in said county court before Hon. Jerome Fuller, county judge, and a jury. Upon the trial the plaintiff, as a witness in his own behalf, gave evidence tending to prove that the dog in question was a trained animal and useful in protecting his premises and stock, and in taking care of the same; and that said dog possessed other valuable qualifications as a trained animal. And that the plaintiff was acquainted with the value of such dogs, and had seen them bought and sold. This testimony was received under objection of the defendant. Whereupon the plaintiff, as a witness in his own behalf, was asked the following questions: "In your opinion, what was the value of your dog?" To which question the counsel for the defendant objected, on the ground that it was incompetent, and also that it was inadmissible, as dogs are not the subject of property, and that they have no value in law. The court sustained the objection; whereupon the plaintiff duly excepted. The defendant then introduced testimony showing that at the time of the killing of said dog he was in the act of chasing and worrying the defendant's sheep while upon his own premises.

The cause being submitted to the jury, they found a verdict in favor of the defendant. Whereupon the court, upon motion of the plaintiff's counsel, ordered and granted a stay of proceedings for thirty days, to enable the plaintiff to make a case with exceptions, to be heard in the first instance at general term of the Supreme Court.

*John C. Chumasero,* for the plaintiff. I. The court below erred in excluding the evidence offered by the plaintiff as to the value of the dog. The plaintiff proved that the dog was a trained animal, and useful in protecting his premises and stock, and in taking care of the same, and

HARVARD
LAW 17...
LIBRARY

that he possessed other valuable qualifications of a trained animal. Also, that the witness was acquainted with the value of such dogs, and had seen them bought and sold. The witness was then asked the question: "In your opinion, what was the value of the dog?" To which question the counsel for the defendant objected, on the ground that it is incompetent, and also that it is inadmissible, *as dogs are not the subject of property and that they have no value in law.* The court sustained the objection; whereupon the plaintiff excepted. The only objection made to the evidence was that "dogs were not the *subject of property* and *had no value in law.*" The defendant insisted that the evidence was incompetent and inadmissible, and stated specifically why the evidence was incompetent and inadmissible, namely that dogs were not the subject of property, and had no value in law. In this he was clearly wrong. Dogs, especially trained animals, *are* the *subject* of *property* and become merchandize. (*Grimes* v. *Shack, Cro. Jac.* 262.) Even beasts *feræ naturæ,* when reclaimed, become such. And such is the case with all domestic animals. (*Wright* v. *Ramscot,* 1 *Saund.* 84, *and see note b.* 2 *Kent's Com.* 7th ed. 409, *marginal page* 249.) There can be no doubt that the owner of a dog has, not merely as in the case of animals *feræ naturæ,* a *qualified* but an *absolute* property in the animal. (3 *Hill,* 395. 2 *Kent, above cited.* 15 *Wend.* 550.) An action will lie by the owner, for an injury to them, or to any reclaimed animal. (17 *Barb.* 565, *and cases cited above.*) And although it is said that at common law dogs are not the subject of larceny, the case was different when dogs were taxed; that made them property and subjects of larceny. (*Wharton's Criminal Law,* 1756. *People* v. *Maloney,* 1 *Harris C. C.* 593. *See also note w, to page* 1756 *of Wharton's Crim. Law.*) Dogs have been taxed in this state since 1789. (*Sess. Laws* 1789.) Such animals, being personal property, the Revised Statutes

make them the subjects of larceny. (2 *R. S. 5th ed. p.* 971.) Indeed, the very same authorities relied upon by the defendant's counsel to sustain their position, fully sustain this position when they attempt to hold that " *the jury must be the judges of the value.*" There can be no doubt upon the question. The defendant's counsel objected to the evidence of value in the court below that it was incompetent, and also inadmissible, *as dogs were not the subject of property, &c.* This, as will be seen by the case, is but one objection upon the grounds specifically stated, and in such case the rule is that when a specific objection is taken it will be presumed that the party did not intend to raise any other questions than those specified, and all other objections which might have been taken, but *were not,* will be deemed to be waived. (2 *Bosw.* 269. 2 *Seld.* 345. 19 *Wend.* 361. 3 *Hill,* 609. 22 *Barb.* 656.) The specific objection, therefore, amounted to nothing, and the court below erred in sustaining it.

II. We submit that we are clearly right in the first point, and secondly, on the question the defendant seeks to argue in this case, we further submit that we are equally correct. The decision of the learned county judge was based purely upon the decision in *Dunlap* v. *Snyder,* (17 *Barb.* 561,) and his honor well remarked, that " were it an open question for his, an inferior, tribunal to decide, he should unhesitatingly admit the evidence." We ask a fair consideration of the decision above referred to. In the case of *Brill* v. *Flagler,* (23 *Wend.* 354,) Chief Justice Nelson held that the evidence of the value of the setter dog in controversy was admissible, and the reasons given by him in the first part of his opinion, on page 356, to which we refer, are conclusive. To use his language : " The case is analogous to those in which the opinions of persons are always permitted of the value of domestic animals, such as cattle, sheep, &c. in which they are in the habit of dealing," &c. &c. With all due deference, we

Brown *v.* Hoburger.

submit that the case of *Dunlap* v. *Snyder* was not well considered. Allen, J. in his opinion, deems the question rather doubtful than conclusively settled; and Hand, J. in the same case, says he has some doubt whether it is competent for any witness to give an opinion as to the value of a dog, but in the next paragraph adds: "*Possibly dogs may become. merchandize,*" &c. and holds that "an action will lie by the owner for an injury to them." In the case of *Harger* v. *Edmonds,* (4 *Barb.* 256,) Gridley, J. in discussing the question as to the competency of the opinions of witnesses, in given cases, remarks, that Chief Justice Nelson went too far when he sanctioned the competency of evidence "as to the value of the services of a person in breaking a setter dog," referring to the case in 23 *Wend.* 354. The learned justice evidently mistook the case in *Wendell,* for the point there decided was as to the *value* of the setter, not the *services in breaking him,* for that question was not decided, nor even hinted at, by the court in the case in *Wendell.* And in the case just alluded to, in 4 *Barbour,* the remark of Justice Gridley was clearly *obiter dictum,* and not contained within the merits or facts of that particular case. But the doctrine we contend for has, we insist, been expressly recognized and conceded by the Court of Appeals, in *Morehouse* v. *Mathews,* (2 *Comst.* 514.) Shankland, J. in discussing the question as to the competency of opinions of witnesses as to value, after citing the opinion of Chief Justice Nelson, in 23 *Wendell,* above referred to, remarks: "In the case last cited, which was an action to recover damages for killing a setter dog, a majority of the court thought it barely competent to allow a witness to testify to its value," &c. The doctrine is not repudiated, but expressly conceded by the court of last resort. It will be borne in mind that, in this case, we proved not only that the dog was a trained animal, and possessed peculiar qualifications, but that he had an actual and positive market value. Now, is there, or can there

be, any law prohibiting the community from considering this or any other species of property, not contraband, an article of bargain and sale, and investing it, like other property, as a horse, a cow, a sheep, a picture, a statue, or any thing else, with a market value, or making it a marketable commodity? Is there any reason that there should be? Farmers may, if they choose, count their farm dogs much more valuable and profitable to them in protecting their cattle, barns, granaries and stock, than some hired help in the shape of man, who, by drunkenness or carelessness, may cause, and often do, more injury than good, and give them value accordingly, and give them, also, a market value. It is simply nonsense to say, that because a dog is a dog, therefore he is of no value, and that no value can be proven. Again, we submit that the rule is equally obnoxious, both to logic and common sense, which would give the owner the value of his dog, and, at the same time, deprive the jury, who are sworn to assess such value, of the testimony of those to whom such value is specifically known. What does a merchant, or physician or artist on the jury, know of the value of a farm dog? How can they arrive at a just and accurate conclusion, save by the testimony of those who know his qualities and market value, such as farmers who use them? Why not apply the same rule to a horse, a cow, a hog, or other domestic animals? And it will be remembered here, that we sought to prove no mere *fanciful* or *fictitious* value, but the *actual market value*, by one who had seen such property bought and sold. If, by thorough training and education, a faithful dog can be made a profitable and indispensable assistant to the farmer, in protecting and taking care of his property, his cattle, stock, &c. in defending the produce stored in his barn, and performing other necessary services on the farm, in the place of hired help, who often lack the fidelity and vigilance of that faithful servant, the well-trained dog, will the courts proclaim the

arbitrary doctrine that such property shall have no market value? It will have and will acquire a market value in spite of every thing, in the same way that all auxiliaries and important assistants, animate or inanimate, will, by the paramount *lex necessitatis*, having obtained the favor and approval of the community, compel their adoption, and obtain an absolute and fixed value. It need scarcely be suggested to the court, that at the time the decision in 17 *Barbour* was declared, the rule of evidence as to the competency of the opinions of witnesses, was quite unsettled. Indeed, Allen, J. remarks, in that very case: "The decisions of the courts in this state are somewhat conflicting as to the rule in relation to the opinions of witnesses." The remark was emphatically true. At that time the courts, if we may be allowed the remark, took a run upon this question, and made some extreme decisions on the point in controversy. But, since then, the later decisions have greatly modified the former ones, and given, as we submit, the true rule upon this much vexed subject. (*See* 36 *Barb.* 644; 28 *How.* 28.) "It is now well settled that any person who is acquainted with the value of the particular kind of property sold, may express an opinion as to its value." (10 *How.* 289.) Suppose the plaintiff had sold this dog to the defendant, could he not have proven his value on the trial? (15 *Barb.* 550. 22 *id.* 652. *Id.* 656. 5 *Denio*, 84. 2 *Hilt.* 61.) The opinions of witnesses as to the value of property are admissible, after proving that they are acquainted with similar property and its value. (4 *Denio*, 370. 9 *N. Y. Rep.* 183, 371. 23 *Wend.* 425. 14 *Barb.* 206. 29 *id.* 9. 35 *id.* 115.) "Opinions of witnesses are always received upon questions as to the value of chattels." (*Opinion of Denio, Ch. J. in* 30 *N. Y. Rep. on page* 613, *sixth line.*) We submit that these decisions are conclusive.

III. Of course, if we are right in the above positions, the court will grant the plaintiff a new trial, irrespective

of the testimony attempted to be introduced on the defense. If a rule of law has been violated, we are entitled to a full trial in the case.

*P. I. Clum*, for the defendant. I. In law, dogs are not recognized as property, and have no legal value as such. Until quite recently they have never been regarded as subjects of larceny. The statute (1 *R. S.* 3*d ed. p.* 883,) requires them to be taxed specifically as such, and by section 6, in default of the payment of such tax, authorizes any person to kill them, and the moneys received by section 8 are constituted a special fund to pay damages done by dogs in certain cases. They are not assessed as *property*, and are nowhere declared to be property. The only value they possess is their usefulness, and this is the subject of damages in case of their being unlawfully killed, to be ascertained by the jury after such useful qualities shall have been properly proven. If dogs, in law, are property, an action of trespass can be maintained against their owners for their entering upon lands, the same as in case of domestic animals.

II. There is a species of dogs having a "special and peculiar value," which are to some extent subjects of traffic, but still their value consists entirely in their usefulness in, and adaptation to sporting purposes. The case in 23 *Wend.* 354 is one of this description. That dog was what is called a *setter*, whose special value consisted in his usefulness in starting birds, in hunting; and the opinion of the witnesses as to his value was held by Judges Nelson and Cowen as barely admissible, and Judge Bronson entirely dissented. Had that dog possessed no qualities different from the one in this action, I think the testimony would have been excluded by the court, and it inferentially sustains the decision of the county court in this case. There were two grounds of objection to the question: One that it was incompetent; the other that it

was inadmissible, &c. One reason why the evidence offered was incompetent is, that it did not call for the market value of the dog, nor his value as a farm dog. Under the question as put to the witness, he could have given, with impunity, the most extravagant value, as he could have had in his mind a thousand of the most fanciful and insubstantial elements of value.

III. This case in 23 *Wend.* was overruled in 17 *Barb.* 561, by the unanimous opinion of a full bench of judges. In that case the court says: "In an action to recover damages for killing a dog, the opinions of witnesses as to his value are not admissible in evidence;" and further says: "The jury are the judges of the value of such property, after hearing the evidence as to the particular qualities and properties of the animal;" and in 22 *Barb.* 506, Judge Allen truthfully says: "Owners of valuable dogs are bound to take care of them proportioned to their value, and keep them within their own precincts, or under their own eye." This question differs from that in 23 *Wend.* There the question was limited to the value of the dog as a "*good setter.*" In this case the plaintiff, testifying as a witness in his own behalf, gave a full description of the usefulness and good qualities of the dog; and then, instead of submitting the question of damages to the jury, was asked his opinion as to his value. This was properly excluded by the court, and the question of damages submitted to the jury upon the plaintiff's evidence.

IV. This action was defended, and the killing of the dog justified, on the sole ground that at the time of such killing he was in the act of chasing and worrying the defendant's sheep upon his own premises, and this fact was shown upon the trial and the jury so found; and the question of the value of the dog, or the plaintiff's damages for his killing, became of no importance as the killing was justified by law. (1 *R. S.* 3d ed. *p.* 885, § 15.) The jury having found in favor of the defendant, must be

presumed to have so found upon that question, as the defendant's evidence was thereto directed; and none appears in opposition. The elements of the plaintiff's damages were fully proven, and had the jury decided against the defendant upon his defense they would have estimated the plaintiff's damages upon that evidence. But they did not arrive at that question.

*By the Court,* JOHNSON, J. The jury, upon the evidence, found a verdict against the plaintiff. The only error which the plaintiff complains of, was the ruling of the court upon the trial, excluding the evidence offered of the opinion of a witness, as to the value of the dog killed by the defendant. In *Dunlap* v. *Snyder,* (17 *Barb.* 561,) it was held unanimously by the four judges that such evidence was incompetent, overruling the decision in *Brill* v. *Flagler,* (23 *Wend.* 354.) It was held in that case that the jury were the judges of the value of the animal, after hearing all the evidence touching his qualities. In *Brill* v. *Flagler,* thus overruled, the court held that the opinion of a witness as to the value of a dog was *barely competent.* That was the case of a "well broke setter dog." The evidence was held admissible, on the ground that the question was put to witnesses supposed to be acquainted with the peculiar qualities of setter dogs, and who had some knowledge of their market value. Dogs, in general, as is well known, have no fixed or general market value. If there is any particular breed or class of dogs which is generally or usually sold in market and have established some fixed, or general market value, I do not see why opinions of witnesses are not as competent to fix the value of such breed, or class, as that of any other marketable property. Opinions as to the value of property, to be competent, must relate to some standard or marketable value. Opinions as to value, founded upon the mere taste or fancy of the owner, or the witness, are not compe-

tent. And for this reason, opinions in regard to the value of dogs which have no standard or marketable value are necessarily fanciful, depending upon the fancy or predilection of the witness, and are not competent. In order to render opinions as to the value of a dog competent, it should first be shown that the dog in question is a marketable animal, either belonging to some peculiar breed, or possessing some peculiar qualities, which make him an animal usually vendible, at some proximately regular price. Nothing of the kind was shown here. It was shown that he was a trained farm dog, and it was offered to be shown that the witness, who was the plaintiff himself, was acquainted with the value of such dogs, and had seen them bought and sold. This fell far short of offering to prove that the dog was a marketable animal, or had any market value, which the witness was acquainted with. I am of the opinion, therefore, that the evidence was properly excluded.

But if it was not, the error did not in any degree prejudice the plaintiff, or affect his right of recovery. It was shown by the defendant, as the case states, that he killed the dog while in the act of chasing and worrying his sheep. This was a justifiable act, and the plaintiff could not have recovered in any view of the case. (1 *R. S.* 885, § 15.) Had the ruling been erroneous, therefore, we should not grant a new trial. A new trial will never be granted where it is apparent that the error did not, and could not, affect the rights of the complaining party.

A new trial must, therefore, be denied.

[Monroe General Term, December 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]