THE PEOPLE, *ex rel.* Jeremiah Cooper, *vs.* NEWCOMB FIELD.

A complaint under the statute relative to "forcible entries and detainers," which alleges that the complainant "had a good and legal right and estate to said premises, and that he still has a legal right to the possession of said premises," does not state the right, but the legal conclusion; and is therefore not a compliance with the statute; which requires that the complaint shall show that the complainant has some estate in the premises, then subsisting, or some other right to the possession thereof, *stating the same.*

That being a statute proceeding, and the authority to proceed derived from the statute, a strict compliance therewith is required; though this objection may be waived by omitting to make it in proper time.

H. being the owner of a lot, gave permission to F. to remove on to it a building owned by F. There was no agreement as to the time it should remain there, or for the payment of rent. Subsequently, H. conveyed the premises to third persons, who made an executory contract with the defendant and C. F. for the sale and conveyance of the premises to them, with the right of immediate possession; and they took possession. C. F. afterwards released his interest to the defendant. The latter, wishing to build upon the lot, requested F. to remove the said building, which F. agreed to do; and he consented that the defendant might excavate the earth up to the building; and the defendant did excavate up to the side, and in front of, the building, without objection. Afterwards, F. sold such building to the relator, by a

The People *v.* Field..

written contract stating that the building should remain where it was, and F. retain the possession until the price was paid, when he was to give possession to the relator. F. remained in possession, under the relator, for some time, when he removed most of his things, and gave the key to the relator. The defendant subsequently removed the building from the premises, into the street.

*Held*, 1. That the relator's possession, in law, if he had any possession, was precisely the same as, and no better than, that of his vendor, F. That the possession of F. was either that of a mere licensee, or as a tenant at will. And that whatever his interest had been before the sale to the relator, it had in part been surrendered to the defendant by F.

2. That F. knew as a fact, and was bound to know in law, that the defendant had all the rights that H. possessed when he, F., moved his building upon the premises.

3. That F., in law, could not deny the title of H. under whom he entered into possession; neither could he deny the title of H.'s grantees or alienees.

4. That if F. was a tenant at will, and if the relator could take a conveyance of such a tenure, the tenancy was destroyed by setting up the title of a third person, in hostility to the title under which he held, or went into possession.

5. That, if there had ever been a tenancy at will, it was such an one that it had been terminated by the request of the defendant to remove the building and end the tenancy, and by the consent of F. to do so, and a surrender of a part of the premises by him, in pursuance of such request.

6. That the entry of the landlord, after this, was in pursuance of a legal right to enter; that he was revested with the right of possession, and could not be a wrongdoer in entering; and, as a legitimate consequence, could not be guilty of forcibly detaining that which was his own; having committed no act of violence upon the relator, or breach of the peace with a multitude of people, and with a strong hand.

THIS was a proceeding by the relator under the statute entitled, "Of forcible entry and detainer," instituted before the county judge of Madison county, to obtain possession of a lot in the village of Oneida, in said county. The complaint alleged "that Newcomb Field, of Durhamville, at the village of Oneida, in said town of Lenox, in the county of Madison, on the 9th day of June, 1863, at about two o'clock in the morning, did unlawfully make a forcible entry into the lands and premises of this complainant, to wit: Bounded on the north by Phelps street, east by the Oneida feeder, on the south by State land, and on the west by the street; it being about twenty-six feet

wide on Phelps street, and about twenty-eight feet deep, on which stands a shop, a building of the said complainant; and that said Newcomb Field did then and there (with a large force of men under and in his employ) violently, forcibly and unlawfully, and with strong hand, eject and expel this complainant from his said lands and premises, and forcibly and violently, and unlawfully taking up said shop or building by main force, and removing said building off of said premises into said Phelps street, and taking possession of said land, and holds this complainant out of the possession of said land and premises.

And this complainant further shows, that he and his grantor have been in the quiet and peaceable possession of said premises and shop for many years, and for more than five years, and had a good and legal right and estate to said premises, and that he still has a legal right to the possession of said premises; and that the said Newcomb Field still unlawfully and forcibly withholds and detains the said lands and premises from said complainant, against the form of the statute in such case made and provided."

An inquisition was taken before the county judge and a jury. The counsel for the said Newcomb Field thereupon made the following objections to the complaint in this proceeding, viz: 1st. The complaint does not set forth the title of the complainant to the premises in question, but merely states a conclusion of law. 2d. The complaint states a conclusion of law as to the title, instead of setting out the facts; which objections were overruled, and to such ruling the said Field by his counsel excepted. The inquisition found the defendant guilty of forcible entry and forcible detainer. The proceedings were moved into the Supreme Court by certiorari, and the traverse ordered to be tried at the circuit. At the circuit the plaintiff was nonsuited. The general term, upon appeal, granted a new trial. It was tried the second time, resulting in a verdict for the defendant. Upon the second appeal, the general

The People *v.* Field.

term again ordered a new trial. On the third trial the jury disagreed. On the fourth trial the jury found the defendant not guilty of a forcible entry, but guilty of a forcible detainer. After the fourth trial a motion was made, at the special term, to quash the proceedings for the defect in the complaint, which was denied, and the defendant appealed from the order. This appeal, together with exceptions taken to the rulings and charge of the judge, upon a case, were again taken to the general term, and another new trial ordered upon the case, but the order made at special term was affirmed. On the fifth trial, a verdict was given by the jury against the defendant, for forcible detainer, and in his favor as to the forcible entry. From this trial, a case and exceptions were made, and that was now before the court for review. The other facts in the case sufficiently appear in the opinion.

*D. Pratt,* for the appellant.

*B. F. Chapman,* for the relator.

*By the Court,* POTTER, J. The law of this case, as pronounced at the general and special terms, under somewhat varying states of fact, has greatly complicated our review. Desiring to observe all proper regard for the adjudications of the court, whose decisions we so highly respect, and which, so far as they are applicable, we must hold to be the law of this case, we are met with some apparent conflicts of theory between the rulings at the circuit, and the law as I understand it to have been announced in the reported decisions of the same case. (52 *Barb.* 198. 1 *Lansing,* 222.)

The third section of the statute, entitled " Of forcible entries and detainers," (2 *R. S.* 508,) requires that the complaint shall show that the complainant has some estate

in the premises, then subsisting, or some other right to the possession thereof, *stating the same.*

The relator alleged, as is seen, " that he had a good and legal right and estate to said premises, and that he still has a legal right to the possession of said premises." This is not stating the right, but the legal conclusion. This was held in 52 *Barbour*, not a compliance with the statute. This is a statute proceeding; the authority to proceed is derived from the statute; and in such cases, strict compliance is required, though this objection may be waived by omitting to make it in proper time. The objection to the sufficiency of this complaint was taken before the county judge, and the objection overruled. In the same case, in 1 *Lansing*, the court held that, in such case, if the objection is taken before the county judge and overruled, after the proceedings are brought into this court by certiorari, it is competent for the defendant, and he should renew the objection before he traverses the inquisition. This was done on the last trial and traverse of this case; and the objection was overruled by the circuit judge. It appears to me that on this review, we should regard the decisions of the general term as the law of the case in this court, and I think it would be unbecoming in us, even did we doubt its soundness, to overrule such decisions. The objection, then, so taken, should be held good, and the ruling to be error. (11 *Wend.* 157. 7 *How. Pr.* 441. 11 *N. Y.* 94.)

There are certain undisputed facts in this case which seem to me to have a controlling influence upon the case—influence in settling the law—and are most material to its determination.

Many years prior to the year 1860, one Sands Higginbotham was, or claimed to be, the owner, and was in possession, of certain lands in Oneida village, including the premises in question, and by an agreement made by him with one James Fish, the latter was permitted to remove

a building owned by him, upon the premises in question. Nothing was said about the time it might remain, or when it should be removed; no agreement was made to pay rent; Higginbotham refused to receive any; and Fish made no agreement to pay rent. Fish removed his building partly upon the premises and partly in the street.

On the 15th of February, 1860, Higginbotham and wife conveyed by deed to Nathan B. Wilber, Albert E. Coe and others, in trust, certain premises and real estate in said village, which included the premises in question. On the 31st of October, 1861, a majority of these trustees made an executory contract with the defendant and one Charles Field, for the sale and conveyance to the latter of a portion of the said trust property, and which contract included, in its description, the *locus in quo*. This contract, in terms, gave the vendees possession of the premises so agreed to be conveyed, and they entered into the possession, for the purpose of erecting a building upon the premises, in pursuance of the said agreement. Charles Field afterwards released to the defendant. In the spring or summer of 1862, the defendant, desiring to build a block of stores upon the lot, requested Fish to remove the building in question from the lot, which Fish agreed to do, and made preparations by a contract to do so, and he obtained the implements for that purpose, and consented that the defendant might excavate the earth up to the building he occupied, and the defendant did so excavate up to the side, and in front, of the building, without objection. After this, and on the 31st of July, 1862, Fish sold this building to the relator, Cooper, by a written contract, stating that the shop (the building in question) should remain where it was, Fish to retain the possession, until the money was paid; and when paid, he was to render up possession to the relator. Fish remained in possession under the relator, until about the 1st of May, 1863, when he removed his things from the shop, except

a few trifling articles, and gave the key to the relator, whose possession from that time was the possession of the key, and occasional opening and entering into the shop, and locking up and departing therefrom, until the morning of the 9th of June, 1863, when the building was wholly removed from said premises into the street, by the defendant. The above, I think, are undisputed facts. It may not be material, upon the question of law which these facts present, to add the following; but it may be as well to state it in this connection; that when the relator purchased the building he knew the progress of the defendant's preparation for building, and the extent of excavation then made, to the side, and in front of the building he purchased; and knew that Fish had made a bargain with men to move the shop from the premises; that Fish had actually procured the removal of the hay scales in front of the shop; and the relator also knew that such intended removal was to enable the defendant to erect his block of buildings.

Upon the facts above stated, the relator's possession in law, if he had any possession, was that, exactly, and no better than that of his vendor, Fish, and the relator took subject to all the previous acts of Fish. The possession of Fish was either that of a mere licensee, or as tenant at will. Whatever his interest had been before the sale to the relator, it had in part been surrendered to the defendant by Fish. Fish knew that the defendant held a conveyance, or an agreement for one, with possession under it, in a direct line from Higginbotham, under whom he (Fish) took, and had been in possession. He knew as a fact, and he was bound to know in law, that Field had all the rights that Higginbotham possessed when he, Fish, moved his building upon the premises. Fish had never denied, and in law he could not deny, the title of Higginbotham, under whom he entered into possession. As little could he deny the title of Higginbotham's grantees, or alienees.

The People *v.* Field.

If Fish was a tenant at will, (which I do not assert,) and if the relator could take a conveyance of such a tenure, (which I deny,) the tenancy was destroyed by setting up the title of the State, or of any one else, in hostility to the title under which he held or went into possession. I think the court erred, on the trial, in permitting the relator to show title to the *locus in quo* in any one other than Higginbotham and his alienees. Indeed I think it would have been the duty of the court at circuit to have nonsuited the plaintiff, if the objection had been made on the ground that there had been no forcible entry, in law, by the defendant; but this objection was not in due form made.

Due respect for what the court has settled to be the law of this case, (which was probably not before the judge at the circuit,) makes it unnecessary to discuss the controverted facts which appear in the voluminous case before us. I propose only, further, to notice the exceptions to the charge of the judge to the jury, and the exceptions to his refusal to charge, made to him by the defendant's counsel. I think, in view of the law as settled, that the following paragraphs of the judge's charge which are excepted to, are each erroneous, viz: " The relator was in the actual possession of the premises, and was at the time he went there; that he was in the constructive possession in the morning when he went there, after the building was removed, so as to entitle him to maintain these proceedings."

"The relator has the right to go to the water in the feeder, or at least to the angle of the bank, upon his complaint and the inquisition."

"If the land belonged to the State, then he (the relator) can maintain forcible entry and detainer."

I think the refusal of the court to charge the following propositions, as requested by the defendant's counsel, was also erroneous:

---

The People *v.* Field.

---

"Neither Fish nor any one holding under him, can dispute the title of Higginbotham."

"The relator cannot prove, under the complaint and inquisition, that the shop in question was on the land belonging to the State."

"If Higginbotham was in possession of the premises in question, whether the State land or not, if Fish moved the shop on them by the license of Higginbotham, Fish could not controvert Higginbotham's title."

If there had ever been a tenancy at will, it was such that it had been terminated by the request of the defendant to remove the shop and terminate it, and by the consent of Fish to do so, and a surrender of a part of the premises by him in pursuance of such request. The entry of the landlord, after this, was in pursuance of a legal right to enter; he was revested with the right of possession, and could not be a wrongdoer in entering; and as a legitimate consequence, could not be guilty of forcibly detaining that which was his own. He committed no act of violence upon the relator; he committed no breach of the peace with a multitude of people, and with a strong hand.

The case was tried, I think, upon an erroneous theory, and errors are the natural consequence. I do not propose to discuss, from the facts, the distinctions between the actual and constructive possession; whether there may be, in certain cases, forcible detainer, when there has been no forcible entry; whether the building in question was real or personal property; nor where is the true line that separates the property of the defendant from that of the State. Doubless the jury have passed upon some of these questions; but in my view of the law they were immaterial in this case. The errors we have pointed out are sufficient to direct a new trial.

New trial granted.

[THIRD DEPARTMENT, GENERAL TERM, at Plattsburgh, July 5, 1870. *Miller*, P. J., and *Potter* and *Parker*, Justices.]