### THE PEOPLE v. KERRAINS.

*Contract — agreement by employer to furnish workman house to live in does not create relation of landlord and tenant — Assault with intent to kill, what constitutes — Evidence.*

By a parol contract it was agreed between an employer and his workman that the employer should pay the workman for his services thirteen shillings a day, and give him the use of a house to live in throughout the year, or while they agreed. *Held,* that the relation between the employer and workman as to the house was that of master and servant, and not that of landlord

and tenant. The possession of the workman was that of the employer, and the employer had the right to remove the workman by force, if necessary, from the house, and any resistance made by the workman to such removal would be unlawful.

The defendant was indicted for an assault with a deadly weapon (an axe), with intent to kill. *Held*, that the evidence of experts as to the location, character and probable consequences of the wound inflicted was proper, as bearing upon the intent of the defendant.

*Held*, also, that evidence that defendant, who had been in the employ of the person assaulted, had done his work intentionally so as to injure his employer, was proper.

It was proper to show that at the time of the assault defendant was maliciously and revengefully disposed toward the person assaulted.

Testimony of defendant tending to show defendant's intention at a time previous to the commission of the assault *held* inadmissible.

Under the statute it is not necessary that the person committing the assault should entertain the intent essential to the crime of murder. An assault and battery with a deadly weapon, and with an intent to maim, or to commit any felony, is sufficient to constitute the offense.

CERTIORARI to the court of sessions of Columbia county, removing a conviction for an assault upon one Isaac Son with a deadly weapon, with the intent to kill, into this court. Most of the facts appear in the opinion. In addition, the following statement only is necessary.

Mr. Son, a paper manufacturer, entered into a verbal contract, in January, 1871, with the defendant, whereby it was agreed that Son should pay defendant thirteen shillings per day for his services as a workman in and about the paper mill for a year, or so long as they could agree, and furnish him a house. Defendant had, for some time previously, been in Son's employ. Defendant was to begin work upon the first of April following, and did so, and occupied the house. About the last of June defendant quit work. Upon the 5th of July Son, having previously requested defendant to vacate the house, with the assistance of other persons undertook to remove the furniture therefrom. Defendant resisted, and in doing so struck Son with an axe, cutting his arm so severely that amputation was necessary, and also inflicting a severe wound in the chest. Defendant was arrested, indicted and convicted of the assault, but sentence was suspended. Defendant, on the trial, admitted the assault, but denied the intent, and claimed that it was done in self-defense — that he was in possession of the premises as tenant, and that Son was unlawfully endeavoring to eject him therefrom.

*Charles M. Bell,* district attorney, and *Charles L. Beale,* for The People, cited, upon the question of the right of possession of the house, *Haywood* v. *Miller,* 3 Hill, 90; *People* v. *Annis,* 45 Barb. 304; *Doyle* v. *Gibbs,* 6 Lans. 180; *Perring* v. *Brooks,* 32 Eng. Com. Law, 543; *Mayhew* v. *Suttle,* 82 id. 347; *Rollins* v. *Riley,* 44 N. H. 9; *People* v. *Fields,* 1 Lans. 245; *Putnam* v. *Wise,* 1 Hill, 234; *Taylor* v. *Bradley,* 39 N. Y. 129, 137, 138, 234.

Upon the question of criminality of defendant in making the assault, *People* v. *Gulick,* Hill & Den. 229; *Scribner* v. *Beach,* 4 Den. 448; *People* v. *Vinegar,* 2 Park. Cr. 24; *People* v. *Shaw,* 1 id. 327; Colby's Cr. Prac. 602, etc.; 1 East. P. C., ch. 5, § 51; 1 Archb. Cr. Prac. 224; Foster, 276; 1 Hale, 481, etc.; 1 Hawkins, ch. 29, §§ 13, 14; 1 East. Cr. Law, 271; *Shorter* v. *People,* 2 N. Y. 193; *Uhl* v. *People,* 5 Park. Cr. 410; *People* v. *Cole,* 4 id. 35; *People* v. *Austin,* 1 id. 154.

*R. E. Andrews,* for defendant, cited, upon the question of right of possession, *Jackson* v. *McLeod,* 12 Johns. 182; *McGee* v. *Gibson,* 1 B. Monr. 105; *Doyle* v. *Gibbs,* 6 Lans. 184; *People* v. *Annis,* 45 Barb. 304. Upon the question of Son's right to enter by force, *Hyatt* v. *Wood,* 4 Johns. 150; *Ives* v. *Ives,* 13 id. 235; *Jackson* v. *Stansbury,* 9 Wend. 202; *Draper* v. *Stouvenel,* 35 N. Y. 507. Upon the question of justification of assault, *Mickle's case,* 1 City H. Record, 96; *Quin's case,* 2 id. 28.

J. POTTER, J. This case comes before this court for review upon a *certiorari* issued to the court of sessions of Columbia county, and the return thereto.

The defendant was indicted October 2, 1871, at a court of oyer and terminer held in the county of Columbia, for an assault and battery with a deadly weapon, committed as alleged upon Isaac Son, with intent to kill, on the 5th day of July, 1871.

The indictment was brought to trial at a court of sessions held in said county on the 27th day of May, 1872.

The defendant was convicted, and the case is brought up for review upon exceptions to the charge and the rulings of the court in receiving and rejecting evidence upon the trial.

The principal exceptions as to the charge relate to the rulings as to the respective rights of the defendant and said Son in respect to the house in which said defendant with his family resided at the time of the assault and battery complained of.

It was substantially charged by the court that said Son had the right of possession of the house, and the right to remove defendant with his effects therefrom, and to employ all the force necessary for that purpose, on the occasion of the alleged assault and battery.

The defendant, claiming the right of possession of the house, with the right of removal of said Son and the exercise of the necessary force therefor, excepted to the charge.

The correctness of the ruling in that regard depends upon the contract between said Son and defendant.

The contract rested in parol, and was testified to by said Son and the defendant. In addition to their testimony of the making the contract, their admissions were given in evidence to contradict or to corroborate their statements.

Inasmuch as the court charged that Son had the right to the possession of the house, and to enter and remove the defendant and his effects therefrom, on the occasion, it becomes necessary to ascertain whether any of the evidence in the case, if assumed to be true, would give the defendant the right of possession, or the right to defend such possession as he had in fact.

The question for consideration then is, was there any view of the evidence which the jury had the right to take, that would give the right of possession of the house to the defendant. If so, the charge was erroneous and injurious to the defendant.

The relations of the conversation or negotiations between Son and defendant, which resulted in the hiring, do not differ in any essential particulars. The substance of the contract was, that Son should pay defendant for his services thirteen shillings a day, steady work, and give him the use of a house to live in throughout the year or while they should agree.

I think the evidence will not support any other or different contract between the parties.

Under such a contract, did Son have the right of possession, together with the right of removal? It was held in *Doyle* v. *Gibbs*, 6 Lans. 180, under a similar contract, that the relation resulting from such a contract, was that of master and servant, and not that of landlord and tenant, and "that the tenancy terminated when plaintiff was discharged from defendant's employment, and the defendant had the right to remove plaintiff's goods unless," etc. To the same effect is *Haywood* v. *Miller*, 3 Hill, 90.

Under a similar agreement in *The People* v. *Annis*, 45 Barb. 304,

The People v. Kerrains.

the court holds this language: "The contract for the service having been determined, and an end put to it in this way (by relators quitting defendant's service), the right of occupancy under it must also and was ended." "Whether the defendant or relator was most in fault, is of no consequence."

The possession of defendant was the possession of Son, his master.

The legal consequences from these premises are, that Son had the right to possess and to remove the defendant, and that defendant's acts could not be in defense of any right to remain upon the premises, and were therefore unlawful.

There is no ground for an argument or a suggestion, that the strict relation of master and servant was changed by any subsequent agreement into that of landlord and tenant ; for at the next interview (and which was on the last day of June), between Son and defendant, after the employment ceased, Son paid and settled arrearages of wages and pasturing, and then told defendant he must leave the house, and if he did not go out by the third day of the succeeding July, he would take measures to put him out, and this was the only interview between them, between the time of defendant's leaving Son's employment, and the assault complained of.

The court refused to charge that Son was guilty of a forcible entry, or of a crime, and an exception was taken to the same.

Under the circumstances, I think the refusal was correct, for whether it was forcible was at least a mixed question of law and fact, and it was for the jury to determine the fact. *People* v. *Field,* 58 Barb. 270.

Besides, it is not apparent how Son could have been guilty of a forcible entry upon premises of which he was already in possession by his servant, the defendant. But however that may be, it would seem to be entirely immaterial in the trial of the issues in this case whether the entry was forcible or not. The question here is entirely aside from the *manner* of the entry.

The true question is, had the defendant any right which he might defend. If he had none, as we have seen, the manner of Son's entry would not give him one. Nor would the manner of Son's entry affect *his* right.

The right to maintain an action of trespass or to defend possession, or to remove persons who are without right, is in no wise affected by the manner of the entry of the rightful possessor. *Hyatt* v. *Wood,* 4 Johns. 150.

I believe these views cover the exceptions to the charge of the court.

It now remains to consider the rulings of the court in relation to the evidence.

The evidence of experts as to the location, character, and probable consequences of the wound was proper as bearing upon the intent of the defendant. He was charged with an intent to kill. Every person is presumed to intend his acts and the consequences of his acts.

The evidence of the manner in which defendant removed the last bleach before his employment ceased was proper if it tended to show that defendant did it intentionally, so as to injure Son or his property.

It was proper to show, at the time of the assault upon Son, that defendant was maliciously and revengefully disposed toward Son.

If the proof did not tend to show *that* disposition, it was immaterial. From the evidence in the case and the charge of the court, the evidence could not have affected the verdict or injured the defendant. *People* v. *Gonzalez,* 35 N. Y. 60; *Brown* v. *Hoburger,* 52 Barb. 25.

It was entirely proper and competent for witness, Son, to give on cross-examination the whole of the conversation upon the same subject, of which defendant's counsel had called out a part.

I cannot see that the exclusion of the evidence that the defendant asked Post to be retained, in case he was arrested, could have injured or affected defendant's rights upon the trial.

They were at best but declarations of the defendant, and the fact that he then and there retained Post as his counsel was proved by defendant, and he had all the benefit that could be derived from that fact. I think the ruling of the court was correct in excluding the testimony of defendant, in taking the axe from the woodshed, and whether, before coming into the buttery, he had made up his mind to give up the contest. Assuming that it was proper for defendant to testify to his intent, it must be the intent of the defendant at the time of committing the assault and battery. It is the intent which exists when the blow is struck, and that may be formed or spring up on the instant.

These questions relate to a time prior to the commission of the act. Witness was allowed to testify as to his intent at the time of

striking the blow, and testified he intended to hit the hand or forearm of defendant.

The only remaining exception of defendant, pressed upon the argument, was to that portion of the charge to the jury holding that defendant could be convicted of an assault and battery with intent to kill, if they should find he intended to commit any felonious homicide.

The language of the statute under which defendant is indicted, is " every person who shall be convicted * * * of an assault and battery upon another, by means of any deadly weapon, * * * with the intent to kill, maim, ravish," etc.

It is plain from the statute that it is not necessary that the defendant should entertain the intent essential to the crime of murder. The assault and battery with a deadly weapon, and with an intent to maim, or to commit any felony, is sufficient to constitute his offense. The words " to kill " are used in a general sense, and mean any felonious homicide. By § 41, 2 R. S. 665, an assault and battery, with intent to commit manslaughter without a deadly weapon, is made a felony.

The statute is clear, and that point has been expressly decided in *The People* v. *Shaw*, 1 Park. Cr. 327.

I think no substantial error to the prejudice of defendant was committed upon the trial, and the case should be sent back for sentence of defendant.

PARKER and BOARDMAN, JJ., concurred.

*Conviction and proceedings affirmed.*