## THE PEOPLE *v.* NEVÁREZ.

### APPEAL from the District Court of San Juan.

No. 37.—Decided February 1, 1906.

EVIDENCE—TESTIMONY OF WITNESSES CONTRADICTORY.—Where the testimony of witnesses is contradictory and the jury cannot harmonize the contradictions, it is within its power to decide what testimony should be believed and what should not.

ID.—CASES IN WHICH A DEFINITE FACT IS PROVED AGAINST A DEFENDANT—VERDICT.—Where there is evidence tending to prove a definite fact among those alleged in the information and which taken together tend to show the guilt of the defendant, the verdict of the jury must not be disturbed unless the testimony is incredible upon its face, or the veracity of the witnesses has been impeached in accordance with law.

ID.—POWERS OF JURY.—It is not sufficient to warrant the reversal of the judgment that the testimony of the witnesses was contradicted, or that they had any interest in the matter which would impel them to testify to given facts, inasmuch as the attitude and conduct of the witnesses before the court and the manner in which they testified are circumstances which the jury may take into consideration; and the reasons must be very strong to warrant the reversal of a judgment on the ground that the verdict is contrary to the evidence where it appears that the jury believed the testimony of some of the witnesses and disbelieved that of others.

ID.—CIRCUMSTANTIAL EVIDENCE.—Where the evidence is circumstantial it must be such that it not only tends to show the guilt of the defendant, but it is necessary that it be incompatible with any rational supposition of the innocence of the accused.

ID.—CORPUS DELICTI.—In regard to that part of the testimony of witnesses which is not contradictory and which on its face is not incredible, the jury has only to consult its own conscience in order to decide whether or not to credit the testimony of the witnesses tending to establish the *corpus delicti.*

The facts are stated in the opinion.
*Mr. Martínez Quintero* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

Luisa Nevárez Ortiz was found guilty of murder in the first degree, and sentenced to the death penalty. From the sentence of death she appealed to this court.

The information was as follows:

"United States of America. The President of the United States, *ss:* In the name and by the authority of The People of Porto Rico. *The People of Porto Rico* v. *Luisa Nevárez, known as Luisa Ortiz.*— In the District Court of San Juan on the 28th of November, 1904. The prosecuting attorney presents an information against Luisa Nevárez, known as Luisa Ortiz, for the crime of murder in the first degree, felony, committed as follows: On or about the 31st of October, 1904, Luisa Ortiz illegally, perfidiously, deliberately and with malice aforethought caused the death of her child, Felícita Ortiz, about nine months old, by means of a sharp instrument, and when the said child was dead, she threw it into the waters of the brook known as Quebrada Honda, in the *barrio* of Espinosa, of the town of Vega Alta, which forms a part of the District of San Juan, where the dead body of the aforesaid child was found. This act is contrary to the law for such case provided and against the peace and dignity of The People of Porto Rico.—Signed: Luis Campillo, *fiscal* of the district.

"The foregoing information is based on the testimony of witnesses examined by me under oath, and I do solemnly believe that there is just cause for the presentation of the same. Sworn to and signed before me this 28th day of November, 1904.—Signed: Luis Méndez Vaz, secretary of the District Court of San Juan."

After the verdict below the defendant made a motion for a new trial, which the court overruled; whereupon the defendant presented what was designated a bill of exceptions, and in considering it the court below held as follows:

"In this case a so-called bill of exceptions has been presented, within the term prescribed by law, by counsel for the convicted party. Really, in such a document we should not allow the discussion of any evidence, except such statements as are necessary to establish the exception taken; but in view of the gravity of the case, we desire to allow counsel for the defence as full a discussion as may

be desired. Thus admitting the bill of exceptions, in so far as is in the power of this court to do, we desire to set out the grounds on which the motion for a new trial was denied.

"In fact, after the judgment was rendered, and before the sentence was pronounced, the accused, by her counsel, made application for a new trial, based on the ground that the verdict was contrary to the evidence. Said application was duly argued and opposed by the representative of The People of Porto Rico, and the court denied the same.

"We duly considered the case, and in fact, could reach no other conclusion, except that the verdict brought in was in accordance with the evidence introduced.

"The presentation of this bill of exceptions at this time sets forth and develops the only exception taken in this case, or to the refusal of this court to grant a new trial, and it is alleged that the evidence in this case was insufficient to show:

"1. The identification of the body of the person who is said to have died, and

"2. That the accused was the person who caused the death of the person who is said to have died.

"We shall proceed to examine the evidence in regard to the identification. In the Quebrada Honda, which runs through the ward of Espinosa of the town of Vega Alta, of the judicial district of San Juan, the body of a child was found. This fact was proven by the testimony of various witnesses. Then a physician made a postmortem examination and under oath on the trial testified that the little child was dead, and that her death had been caused by a hemorrhage produced by a wound which had been inflicted; and two witnesses also testified under oath, on the trial, to the effect that they had recognized in that dead child the daughter of the accused. Thus from the testimony of those witnesses, the conclusion may be reached, that the dead body of the little child was identified.

"We shall now proceed to examine the other allegation, or that the evidence is not sufficient to reach the conclusion that the death of the child was caused by Luisa Nevárez Ortiz. It is true that not a single witness testified that he saw Luisa Nevárez take a weapon in her hand and thrust it into the little body of her girl baby, thus causing its death. But there is circumstantial evidence which if examined together may be made a sufficient basis for a verdict of guilty. Witnesses under oath testified in regard to the relations existing between the accused and her child; in regard to statements made by the accused to the effect that her child would not reach Manatí. Witnesses

also testified (and this fact was to a certain extent confirmed by the accused herself) to the effect that the accused, on the day before the crime was committed, had gone with her child to visit her godmother, accompanied also by a son of Eduardo Ortiz; that on returning to the house of Eduardo Ortiz, she (the accused) made the son (of Ortiz) go by another road, and she remained alone with her little child; that she returned in fact with her child's clothing completely wet, and that she explained the incident by saying that she had made a little bed for the baby near the brook for her to sleep on, that the child had rolled into the water, and that upon seeing its little white eyes she felt sorry for it and took it out of the water.

"By the testimony of three witnesses; that is to say, Eduardo Ortiz, his wife, and his son Juan, the conclusion may be reached that the accused, on the 31st day of October, 1904, at daybreak, left the house of Eduardo Ortiz with her little daughter in her arms, and by the testimony of two other witnesses, the conclusion may be reached that one or two hours later she was seen on the Manatí road, alone, without her little one in her arms, which little child, as has already been stated, was found three or four days later in the Quebrada Honda.

"It may be concluded therefore that the accused went out with her daughter, and that hours after having gone out she no longer had her child with her, and that the said child had been found dead, assassinated.

"The accused testifies, and what does she tell us? She tells us that she went out with her little girl baby, and that she left it at the house of Eduardo Ortiz; that she did not know that her little baby was dead.

"Such is the evidence. If it is concluded that Eduardo Ortiz, that his wife, that his little son, have told the truth, we are confronted with the fact the accused went out with her child. And who, if not she, whose actions towards her child are known to us by the evidence, has caused the death of the child? Who, if not she, who beat her child only a few months' old; who said that it would not reach Manatí; who would not leave it with her grandmother nor with her uncle; who went out with it; and who, when the child was found murdered, and when asked in regard to the matter, gives as her only reply that she did not go out with her child; that she left it at the house of Eduardo Ortiz, and that she knew nothing more; who if not she, we repeat, could have been the murderer?

"We cannot always see, by eye witnesses, the very act of a crime when it is perpetrated. For that reason the law allows the admission

of circumstantial evidence or indications, which is more sure, more positive on many occasions than direct evidence.

"The jury are the judges of fact. They can and must decide in regard to the credibility of the witnesses. They believed in the present case that Eduardo Ortiz and his wife and his son testified to the truth, and that Luisa, in fact, did go out with her child. They weighed all the other evidence introduced. They were convinced by direct evidence that the dead body of the child was found, and in their judgment it was clearly identified. And they gave their verdict of guilty, in the opinion of the court, not against, but in accordance with the evidence.

"For these reasons the court denied the application for a new trial. San Juan, P. R., March 6th, 1905.—Signed: Emilio del Toro, judge of the court."

On page 4 of the record appears the following statement:

"No statement of facts has been presented in this case. By order of the court the transcript of the evidence presented is made, which transcript has been delivered by the official stenographer of the court."

We may follow the court below in considering the bill of exceptions sufficient to permit us to review the questions raised by the appellant.

In this case the error assigned by counsel in his brief is that the verdict was contrary to the evidence. He insists that the evidence being circumstantial, the jury, from the facts of the case, ought to have had a reasonable doubt of the guilt of the defendant.

In discussing whether certain instructions ought or ought not to have been given to the jury the Supreme Court of the United States, through Mr. Justice Field, says:

"Third. The instruction to the jury, which is the subject of exception, relates to the meaning of the words 'reasonable doubt,' which should control them in their decision. The following is that portion which bears upon this subject:

"The court charges you that the law presumes the defendant innocent until proven guilty beyond a reasonable doubt. That if you can reconcile the evidence before you upon any reasonable hypothesis

consistent with the defendant's innocence, you should do so, and in that case find him not guilty. You are further instructed that you cannot find the defendant guilty unless from all the evidence you believe him guilty beyond a reasonable doubt.

"The court further charges you that a reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence. And if, after an impartial comparison and consideration of all the evidence, you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; but if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.

"The word 'abiding' here has the signification of settled and fixed; a conviction which may follow a careful examination and comparison of the whole evidence. It is difficult to conceive what amount of conviction would leave the mind of a juror free from a reasonable doubt, if it be not one which is so settled and fixed as to control his action in the more weighty and important matters relating to his own affairs. Out of the domain of the exact sciences and actual observation there is no absolute certainty.. The guilt of the accused, in the majority of criminal cases must necessarily be deduced from a variety of circumstances leading to proof of the fact. Persons of speculative minds may in almost every such case suggest possibilities of the truth being different from that established by the most convincing proof. The jurors are not to be led away by speculative notions as to such possibilities.

"In *Commonwealth* v. *Webster*, 5 Cush. (Mass.), 295, 320, (S. C. 52 Am. Dec., 711) the Supreme Judicial Court of Massachusetts, stated in its charge that it was not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged against the prisoner was more likely to be true than the contrary, and said: 'The evidence must establish the truth of the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it. This we take to be proof beyond reasonable doubt.'

"The difficulty with this instruction is, that the words 'to a reasonable and moral certainly' add nothing to the words 'beyond a reasonable doubt;' one may require explanation as much as the other. In *Commonwealth* v. *Costly*, 118 Mass., 1, the same court held

that, as applied to a judicial trial for crime, the two phrases were synonymous and equivalent, and that each signified such proof as would satisfy the judgment and consciences of the jury that the crime charged had been committed by the defendant, and so satisfy them as to leave no other reasonable conclusion possible. It was there also said, that an instruction to the jury that they should be satisfied with the defendant's guilt beyond a reasonable doubt, had often been held sufficient, without further explanation. In many cases it may undoubtedly be sufficient. It is simple, and as a rule to guide the jury is as intelligible to them generally as any which could be stated, with respect to the conviction they should have of the defendant's guilt to justify a verdict against him. But in many instances, especially where the case is at all complicated, some explanation or illustration of the rule may aid in its full and just comprehension. As a matter of fact, it has been the general practice in this country of courts holding criminal trials to give such explanation or illustration. The rule may be, and often is, rendered obscure by attempts at definition, which serve to create doubts instead of removing them. But an illustration like the one given in this case, by reference to the conviction upon which the jurors would act in the weighty and important concerns of life, would be likely to aid them to a right conclusion, when an attempted definition might fail. If the evidence produced be of such convincing character that they would unhesitatingly be governed by it in such weighty and important matters, they may be said to have no reasonable doubt respecting the guilt or innocence of the accused, notwithstanding the uncertainty that attends all human evidence. The instruction in the case before us is as just a guide to practical men as can well be given; and if it were open to criticism it could not have misled the jury, when considered in connection with the further charge, that if they could reconcile the evidence with any reasonable hypothesis consistent with the defendant's innocence they should do so, and in that case find him not guilty. The evidence must satisfy the judgment of the jurors as to the guilt of the defendant, so as to exclude any other reasonable conclusion.

"The instruction is not materially different from that given by Lord Tenterden, as repeated and adopted by Chief Baron Pollock, in *Rex* v. *Muller*. 'I have heard,' said the Chief Baron, addressing the jury, 'the late Lord Tenterden frequently lay down a rule which I will pronounce to you in his own language: ''It is not necessary that you should have a certainty which does not belong to any human transaction whatever. It is only necessary that you should have that

certainty with which you should transact your own most important concerns in life.'' No doubt the question before you to-day—involving as it does the life of the prisoner at bar—must be deemed to be of the highest importance; but you are only required to have that degree of certainty with which you decide upon and conclude your own most important transactions in life. To require more would be really to prevent the repression of crime, which it is the object of criminal courts to effect.' '' (*Hopt* v. *Utah,* 120 U. S., 430.)

And in *Brown* v. *The State,* 1 Texas Court of Appeals Reports, page 159, the court says:

"There is scarcely a case of any importance appealed from the lower court in which the instructions of the judge upon the reasonable doubt are not made the subject of comment. Our Supreme Court took occasion, in the case of *Monroe* v. *The State* (23 Tex., 210) to commend the definition, by the Hon. Peter W. Gray, of this doubt. He said, substantially, that the reasonable doubt was such a doubt as fairly and naturally presented itself from the facts which the jury believed to be true; that the rule was that all the material facts which they believed to be true should lead in such a manner to the conclusion, to a moral certainty, that defendant was guilty as that they could not reasonably believe otherwise."

The rule in cases of circumstantial evidence has been correctly stated by counsel for appellant when he cites from *Hodge's case* (2 Lewin C. C., 227) namely:

"The case has been made up of circumstances entirely, and before you could find the prisoner guilty, you must be satisfied not only that these circumstances were consistent with his having committed the act, but you must also be satisfied that the facts were such as to be inconsistent with any other rational conclusion than that the prisoner was the guilty person."

Greenleaf, volume 1, section 34, lays down the rule, citing *Hodge's case supra:*

"And where a criminal charge is to be proved by circumstantial evidence, the proof ought to be not only consistent with the prisoner's guilt, but inconsistent with any other rational conclusion."

This is also the principle followed in California (*People* v. *Strong,* 30 Cal., 151).

The question presented to us is whether the jury ought, on the evidence, to have had a reasonable doubt of the guilt of the defendant. When they cannot reconcile the testimony of witnesses, it is within the province of the jury to decide who are and who are not to be believed. Where there is evidence tending to prove a particular fact in the chain against the defendant, this court ought not to disturb the verdict, unless the statements of the witnesses are inherently incredible, or discredited in one of the modes known to the law. It would not be enough merely to show that the witnesses are contradicted or that they had an interest or a motive for their testimony. Their manner of testifying, bearing and behavior are matters which the jury notice and have a right to take into consideration, and the case ought to be a strong one which would entitle us to reverse a judgment founded on an error in the verdict, because contrary to the evidence, where the latter shows that the jury have believed one witness over another.

In this court, as in the court below, counsel relies on two grounds for setting aside the verdict, namely, that the evidence was insufficient to show:

1. The identification of the body of the person who is said to have died.

2. That the accused was the person who caused the death of the person who is said to have died.

The testimony of the two witnesses to which Judge Toro refers as tending to establish the identity of the child is clear and unmistakable. Counsel, however, lays stress on the fact that the child had lost some of its features, and was considerably decomposed, and that Doctor Amadeo testified that it could be recognized with difficulty. The doctor was not called on to specify the degree of the difficulty with which the recognition could be effected; he saw the child some hours later than the other witnesses, and the jury were entitled to give

due weight to the testimony of the two witnesses, whose credibility was not attacked, and who had the same, if not superior opportunities for observation than the doctor.. Especially did the jury, if they believed him, have a right to rely on the testimony of Eduardo Ortiz, the great uncle of the child, who recognized it, not only by its features and family resemblance, but also by the little garment it wore, and we could hardly think of a better means of identifying a person, however young, than by the testimony of a near relative. The jury would have a right in this connection to consider the remarks of the defendant, that the child would not arrive at Manatí, and they were also entitled along with the other circumstances of the case to draw inferences from the testimony, manner and bearing of the defendant, when questioned with respect to the disappearance and death of the child; even in regard to the manner in which she answered the particular question of whether she did not leave the child in the brook.

Counsel for appellant, in his brief, urges that it was first necessary to prove that the child had disappeared and no longer existed as a human being, suggesting that it might possibly be alive. The most obvious answer is that there was sufficient evidence to show that the baby found in the Quebrada Honda was the child of Luisa Nevárez Ortiz.

The court below, in considering the second ground for attacking the verdict has made an excellent analysis and summing up of the evidence in the case. As against this exposition, counsel puts forward the hypothesis that Eduardo Ortiz, principal witness for the prosecution, might have caused the disappearance of the child, in order to accuse his niece of the crime. This theory is urged by counsel with great intelligence and ability. It is true, as we have seen in the authorities, that where the evidence is circumstantial, it should exclude every reasonable hypothesis of the innocence of the defendant. It is within the bounds of possibility that Eduardo Ortiz, without apparent motive, did do away with the 8-months-old baby, and that he, his wife and his son testified

falsely. It is possible that the defendant told the truth and the other witnesses, without any ground or reason swore falsely; to this extent it is necessary to go to make good the hypothesis of counsel. But this is not the way the reasoning human mind proceeds. In order to doubt the testimony of the Ortiz family something more than ingenious speculation is required. In the absence of conflicting evidence or inherent improbability, each juryman had only to consult his reason and his conscience in order to find as true the statements of Eduardo Ortiz and of the other witnesses, whose statements go to make up the *corpus delicti.*

We have examined the evidence with scrupulous care, and we find nothing in it which would justify our holding that the jury ought not to have found a verdict of guilty. We cannot see, under the authorities cited, or under any authority known to us, why the jury should have had a reasonable doubt. The disappearance and death of the child, the previous acts of the defendant with respect to her offspring, as tending to show that the baby had become a burden to her, were not entirely matter of circumstantial evidence. These matters were mainly proved by eye witnesses. Given the violent death, the motive for it, and the examination of the body made by Doctor Amadeo, the jury, on the evidence, although circumstantial, were justified in finding, to a moral certainty, that the defendant was the author of the crime.

With no less care than we have examined the evidence we have gone over the instructions of the court, although of them no complaint is made, and we find no error therein. Nor does any other error appear in the record.

There being nothing in the case on which to found a reversal, the judgment of the District Court of San Juan must be affirmed.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández, Figueras and MacLeary concurred.