# HOPT *v.* UTAH.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

Argued January 21, 1887. — Decided March 7, 1887.

Evidence, or what purports to be evidence, in a criminal case, printed in a
newspaper, is " a statement in a public journal " within the meaning of
the act of Utah declaring that no person shall be disqualified as a juror
by reason of his having formed or expressed an opinion upon the matter
or cause to be submitted to him, " founded upon public rumor, statements
in public journals, or common notoriety, provided it appear to the court,
upon his declaration under oath or otherwise, that he, can and will, not-
withstanding such an opinion, act impartially and fairly upon the matters
submitted to him."

The judgment of the court as to the competency of the juror upon his
declaration under oath or otherwise, as above, is conclusive.

When a challenge by a defendant in a criminal action to a juror, for bias,
actual or implied, is disallowed, and the juror is thereupon peremptorily
challenged by the defendant, and excused, and an impartial and compe-
tent juror is obtained in his place, no injury is done to the defendant, if
until the jury is completed he has other peremptory challenges which he
can use.

## Opinion of the Court.

The opinion of a physician, after making a post-mortem examination of the deceased, who 🌑me to his death by a blow inflicted upon his head, as to the direction from which the blow was delivered, is admissible in evidence.

If the evidence produced in a criminal action be of such a convincing character that the jurors would unhesitatingly be governed by it in the weighty and important matters of life, they may be said to have no reasonable doubt respecting the guilt or innocence of the accused, notwithstanding the uncertainty which attends all human evidence. Therefore, a charge to the jury that if, after an impartial comparison and consideration of all the evidence, they can truthfully say that they have an abiding conviction of the defendant's guilt, such as they would be willing to act upon in the more weighty and important matters relating to their own affairs, they have no reasonable doubt, is not erroneous.

An allusion, in the final argument to the jury by the counsel for the prosecution, to the case as having been many times brought before the tribunals, is not a ground for reversing a judgment under the statute of Utah, which declares that on a new trial the "former verdict cannot be used or referred to either in evidence or argument."

THIS writ of error was sued out by the defendant below, who was indicted, tried and convicted of murder, to review the proceedings and judgment there. The case is stated in the opinion of the court.

*Mr. Benjamin Sheeks* and *Mr. P. L. Williams* for plaintiff in error.

*Mr. Assistant Attorney General Maury* for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The defendant below, the plaintiff in error here, Frederick Hopt, was indicted in the District Court of the Third Judicial District of Utah, in December, 1880, for the murder of John F. Turner on the 3d of the preceding July. He was four times convicted in that court, upon this indictment, of murder in the first degree. The judgment of death pronounced against him on each previous conviction was reversed by this court. The decisions are found in 104 U. S. 631; 110 U. S. 574; and 114 U. S. 488. The last conviction took place in September, 1885; judgment was passed in October following;

and on appeal to the Supreme Court of the territory it was affirmed in January, 1886, except as to the time of its execution; that was to be fixed by the District Court, to which the cause was remanded for that purpose. To secure a reversal of this judgment the case is brought before us on a writ of error.

The errors assigned are: 1st, the ruling of the trial court upon challenges to several jurors; 2d, the admission in evidence of the opinion of a witness as to the direction from which the blow was delivered which caused the death of the deceased; 3d, the instruction to the jury as to the meaning of the words "reasonable doubt;" and, 4th, the reference on the argument by the district attorney to previous trials of the case.

1st. Four persons summoned as jurors were examined on their *voir dire*, and challenged by the defendant, one for actual bias, under § 241 of the act of the territory regulating proceedings in criminal cases, passed in 1878; and the other three for both actual and implied bias. Actual bias is defined by that act to be "the existence of a state of mind, on the part of a juror, which leads to a just inference in reference to the case that he will not act with entire impartiality."

The juror Young, challenged as having that state of mind, that is, for actual bias, testified that he had heard of the case, but had never talked with any one who pretended to know about it; that he had impressions as to the guilt or innocence of the defendant, but could not say that he had ever formed any opinion on the subject, and did not remember that he had ever expressed any; that possibly his impressions were strong enough to create, from sympathy, some bias or prejudice, but he thought he could sit on the jury and be guided by the evidence, and try the case impartially as if he had never heard of it before. Upon this testimony, the court was of opinion that he was a competent juror; and accordingly the challenge was disallowed. In this ruling we see no error. The juror was then peremptorily challenged by the defendant, and was excused.

That act also provides, in § 242, that a challenge for implied

bias may be taken for all or any of the following causes, and for no other:

1. Consanguinity or affinity within the fourth degree to the person alleged to be injured by the offence charged, or on whose complaint the prosecution was instituted, or to the defendant;

2. Standing in the relation of guardian and ward, attorney and client, master and servant, or landlord and tenant, or being a member of the family of the defendant, or of the person alleged to be injured by the offence charged, or on whose complaint the prosecution was instituted, or in his employment on wages;

3. Being the party adverse to the defendant in a civil action, or having complaint against or being accused by him in a criminal prosecution;

4. Having served on the grand jury which found the indictment, or on a coroner's jury which inquired into the death of a person whose death is the subject of the indictment;

5. Having served on a trial jury which has tried another person for the offence charged in the indictment;

6. Having been one of the jury formerly sworn to try the same indictment, and whose verdict was set aside, or which was discharged without a verdict, after the case was submitted to it;

7. Having served as a juror in a civil action brought against the defendant for the act charged as an offence;

8. Having formed or expressed an unqualified opinion or belief that the prisoner is guilty or not guilty of the offence charged;

9. If the offence charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty; in which case he must neither be permitted nor compelled to serve as a juror.

The act provides, in § 244, that, "in a challenge for implied bias, one or more of the causes stated in § 242 must be alleged." (Laws of 1878, pp. 111, 112.)

Another act of the territory, passed in March, 1884, declares that "no person shall be disqualified as a juror by reason of

having formed or expressed an opinion upon the matter or cause to be submitted to such jury [juror], founded upon public rumor, statements in public journals, or common notoriety.; provided it appear to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters submitted to him. The challenge may be oral, but must be entered in the minutes of the court or of the phonographic reporter." (Laws 1884, p. 124.)

The juror Gabott, challenged for both actual and implied bias, testified on his direct examination, in substance, as follows: that he had heard of the case through the newspapers, and read what was represented to be the evidence; that he had talked about it since that time; that he did not think he had ever expressed an opinion on the case, but that he had formed a qualified opinion; that is, if the evidence were true, or the reports were true; that he had an opinion touching the guilt or innocence of the accused which it would take evidence to remove; but that he thought he could go into the jury-box and sit as if he had never heard of the case, and that what he had heard would not make the least difference. On his cross-examination, he testified that he knew nothing about the case, except what he had read from time to time in the public press; that, if what he had heard turned out to be the facts in the case, he had an opinion, otherwise not; that is, his opinion was a qualified one, and that, according to his present state of mind, he could sit on the jury and determine the case without reference to anything he had heard; that he was not conscious of any bias or prejudice that might prevent him from dealing with the defendant impartially; and that he thought he could try the case according to the law and the evidence given in court. On his reexamination he further stated that he would be guided by the evidence altogether, without being influenced by any opinion he might then have, or may have previously formed.

The court held that the juror was competent. By the express terms of the statute of 1884 he could not be disqualified as a juror for an opinion formed or expressed upon statements

in public journals, if it appear to the court, upon his declaration under oath or otherwise, that he could and would, notwithstanding such an opinion, act impartially and fairly upon the matters submitted to him. We think that evidence, or what purports to be evidence, printed in a newspaper is a "statement in a public journal" within the meaning of the statute; and that the judgment of the court upon the competency of the juror in such cases is conclusive.

The juror Winchester, who was also challenged for actual and implied bias, testified that he had heard of the case through the papers; that he had heard it talked of some years ago; that he believed he had heard what purported to be the evidence as given in the newspapers on previous trials, and believed he had formed and expressed an opinion as to the guilt or innocence of the accused, and though it was an unqualified opinion, it was not a fixed or settled one; that at the time he read the papers, he had formed such an opinion as would have required testimony to remove it from his mind, and if his memory was refreshed as to the testimony there would probably be a renewal of the opinion he had formed; that he had not talked with any one, and could hardly tell the circumstances now; that he believed that his mind was free from any impression, and that he could sit on the jury and try the case precisely as if he had never heard of it or read of any of the facts. To inquiries of the court, the juror repeated, in substance, what he had previously said, that he thought he could sit in the jury-box and try the case according to the evidence without reference to any opinion he may then or theretofore have formed; that he could try defendant impartially according to the evidence, and that he would do so. The court thereupon held that he was competent, and the challenge was disallowed. This ruling disposed of the challenge, and the judgment of the court, for the reasons stated, was conclusive under the statute of March, 1884. The defendant thereupon peremptorily challenged the juror, and he was excused.

The fourth juror, Harker, who was challenged for actual and implied bias by the defendant, was examined on his *voir*

*dire*, but after hearing his testimony the challenge was disallowed; and thereupon the district attorney peremptorily challenged him, and he was excused.

The challenges for implied bias fell, as there was no specification of the grounds for such challenges, as required by § 242 of the act of 1878.

In capital cases in Utah, the government and the accused are each allowed fifteen peremptory challenges. (Laws of Utah of 1884, c. 48, § 24.) Notwithstanding the peremptory challenges made by the defendant to two of the jurors, he had several such challenges which had not been used when the jury was completed. If, therefore, the ruling of the court in disallowing the challenges to the two for bias, actual or implied, was erroneous, no injury to the defendant followed.

Those jurors were not on the jury, and impartial and competent jurors were obtained in their place, to whom no objection was made. *Hayes* v. *Missouri, ante,* 68 ; *Mimms* v. *The State,* 16 Ohio St. 221 ; *Erwin* v. *The State,* 29 Ohio St. 186, 190. It is therefore only the ruling on the challenge to the juror Gabott which can properly be assigned as error here ; and, for the reasons stated, that ruling was in our judgment correct.

2d. The deceased came to his death from a blow inflicted upon the left side of his head, which crushed his skull. A postmortem examination of the body was made by a physician, who was allowed, against the objection of the defendant, to give his opinion as to the direction from which the blow was delivered, after he had stated that his examination of the body had enabled him to form an intelligent opinion upon that point. The ground of the objection was that the direction in which the blow was delivered was not a matter for the opinion of an expert, but one which should be left to the jury. The court overruled the objection, and the defendant excepted. The witness stated, as his opinion, that the blow was delivered from behind and above the head of the person struck, and from the left toward the right. This testimony was supposed to have some bearing upon the case when considered in connection with the fact that the accused was a left-handed man. On the following morning, counsel on behalf of the prosecu-

tion moved that this evidence should be stricken from the record, and the jury be instructed to disregard it. The counsel for the defendant did not object to that, but he wished the record to show that the application was made on the following morning. The court thereupon instructed the jury that the evidence was stricken out, and that they were not to consider it at all. The defendant now contends that it was error to admit the evidence, and that the error was not cured by striking it out and the instruction to the jury. To this the answer is, 1st, that the evidence was admissible; and, 2d, that, if not admissible, the error was cured by the evidence being stricken out with the accompanying instruction.

The opinions of witnesses are constantly taken as to the result of their observations on a great variety of subjects. All that is required in such cases is that the witnesses should be able to properly make the observations, the result of which they give; and the confidence bestowed on their conclusions will depend upon the extent and completeness of their examination, and the ability with which it is made. The court below, after observing that every person is competent to express an opinion on a question of identity, as applied to persons in his family or to handwriting, and to give his judgment in regard to the size, color, and weight of objects, and to make an estimate as to time and distance, cited a great number of cases illustrative of this doctrine. We quote a passage containing them. "He may state his opinion," says the court, " with regard to sounds, their character, from what they proceed, and the direction from which they seem to come. *State v. Shinborn,* 46 N. H. 497; *Commonwealth v. Pope,* 103 Mass. 440; *Commonwealth v. Dorsey,* 103 Mass. 412. Non-experts have been allowed to testify whether certain hairs were human, *Commonwealth v. Dorsey,* 103 Mass. 412; that one person appeared to be sincerely attached to another, *McKee v. Nelson,* 4 Cowen, 355 [*S. C.* 15 Am. Dec. 384]; as to whether another was intoxicated, *People v. Eastwood,* 14 N. Y. 562; as to whether a person's conduct was insulting, *Raisler v. Springer,* 38 Ala. 703 [*S. C.* 82 Am. Dec. 736]; as to resemblance of foot-tracks, *Hotchkiss v. Germania Ins. Co.,* 5

Hun, 90; as to value of property, when competent, *Brown* v. *Hoburger*, 52 Barb. 15; *Bank* v. *Mudgett*, 44 N. Y. 514; *Bedell* v. *Long Island Railroad*, 44 N. Y. 367; *Swan* v. *Middlesex Co.*, 101 Mass. 173; *Synder* v. *Western Union Tel. Co.*, 25 Wis. 60; *Brackett* v. *Edgerton*, 14 Minn. 174; as to market value of cattle derived from newspapers, *Cleveland, &c., Railroad* v. *Perkins*, 17 Mich. 296; whether there was hard pan in an excavation, *Currier* v. *Boston & Maine Railroad*, 34 N. H. 498; whether one acted as if she felt sad, *Culver* v. *Dwight*, 6 Gray, 444; as to rate of speed of a railroad train on a certain occasion, *Detroit, &c., Railroad* v. *Von Steinburg*, 17 Mich. 99; as to whether noisome odors render a dwelling uncomfortable, *Kearney* v. *Farrell*, 28 Conn. 317 [*S. C.* 73 Am. Dec. 677]; whether the witness noticed any change in the intelligence or understanding or any want of coherence in the remark of another, *Barker* v. *Comins*, 110 Mass. 477; *Nash* v. *Hunt*, 116 Mass. 237."

Upon the same principle, the testimony of the physician as to the direction from which the blow was delivered was admissible. It was a conclusion of fact which he would naturally draw from the examination of the wound. It was not expert testimony in the strict sense of the term, but a statement of a conclusion of fact, such as men who use their senses constantly draw from what they see and hear in the daily concerns of life. *Conn. Life Ins. Co.* v. *Lathrop*, 111 U. S. 612, 620. But, independently of this consideration, as to the admissibility of the evidence, if it was erroneously admitted, its subsequent withdrawal from the case, with the accompanying instruction, cured the error. It is true, in some instances, there may be such strong impressions made upon the minds of a jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission; and in that case the original objection may avail on appeal or writ of error. But such instances are exceptional. The trial of a case is not to be suspended, the jury discharged, a new one summoned, and the evidence retaken, when an error in the admission of testimony can be corrected by its withdrawal with proper instructions from the court to disregard it. We think the present

case one of that kind. *State* v. *May*, 4 Devereux, Law, 328, 330; *Goodnow* v. *Hill*, 125 Mass. 587, 589; *Smith* v. *Whitman*, 6 Allen, 562; *Hawes* v. *Gustin*, 2 Allen, 402, 406; *Dillin* v. *The People*, 8 Mich. 357, 369; *Specht* v. *Howard*, 16 Wall. 564.

3d. The instruction to the jury, which is the subject of exception, relates to the meaning of the words "reasonable doubt," which should control them in their decision. The following is that portion which bears upon this subject:

"The court charges you that the law presumes the defendant innocent until proven guilty beyond a reasonable doubt. That if you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence, you should do so, and in that case find him not guilty. You are further instructed that you cannot find the defendant guilty unless from all the evidence you believe him guilty beyond a reasonable doubt.

"The court further charges you that a reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence. And if, after an impartial comparison and consideration of all the evidence, you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; but if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt."

The word "abiding" here has the signification of settled and fixed, a conviction which may follow a careful examination and comparison of the whole evidence. It is difficult to conceive what amount of conviction would leave the mind of a juror free from a reasonable doubt, if it be not one which is so settled and fixed as to control his action in the more weighty and important matters relating to his own affairs. Out of the domain of the exact sciences and actual observation there is no absolute certainty. The guilt of the accused, in the majority of criminal cases, must necessarily be deduced from a variety of circumstances leading to proof of the fact. Persons of

speculative minds may in almost every such case suggest possibilities of the truth being different from that established by the most convincing proof. The jurors are not to be led away by speculative notions as to such possibilities.

In *Commonwealth* v. *Webster*, 5 Cush. (Mass.) 295, 320, [*S. C.* 52 Am. Dec. 711,] the Supreme Judicial Court of Massachusetts stated in its charge that it was not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged against the prisoner was more likely to be true than the contrary, and said : " The evidence must establish the truth of the fact to a reasonable and moral certainty ; a certainty that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it. This we take to be proof beyond reasonable doubt."

The difficulty with this instruction is, that the words " to a reasonable and moral certainty " add nothing to the words " beyond a reasonable doubt ; " one may require explanation as much as the other. In *Commonwealth* v. *Costley*, 118 Mass. 1, the same court held that, as applied to a judicial trial for crime, the two phrases were synonymous and equivalent, and that each signified such proof as would satisfy the judgment and consciences of the jury that the crime charged had been committed by the defendant, and so satisfy them as to leave no other reasonable conclusion possible. It was there also said, that an instruction to the jury that they should be satisfied of the defendant's guilt beyond a reasonable doubt, had often been held sufficient, without further explanation. In many cases it may undoubtedly be sufficient. It is simple, and as a rule to guide the jury is as intelligible to them generally as any which could be stated, with respect to the conviction they should have of the defendant's guilt to justify a verdict against him. But in many instances, especially where the case is at all complicated, some explanation or illustration of the rule may aid in its full and just comprehension. As a matter of fact, it has been the general practice in this country of courts holding criminal trials to give such explanation or illustration. The rule may be, and often is, rendered obscure by

attempts at definition, which serve to create doubts instead of removing them. But an illustration like the one given in this case, by reference to the conviction upon which the jurors would act in the weighty and important concerns of life, would be likely to aid them to a right conclusion, when an attempted definition might fail. If the evidence produced be of such a convincing character that they would unhesitatingly be governed by it in such weighty and important matters, they may be said to have no reasonable doubt respecting the guilt or innocence of the accused, notwithstanding the uncertainty that attends all human evidence. The instruction in the case before us is as just a guide to practical men as can well be given; and if it were open to criticism it could not have misled the jury, when considered in connection with the further charge, that if they could reconcile the evidence with any reasonable hypothesis consistent with the defendant's innocence they should do so, and in that case find him not guilty. The evidence must satisfy the judgment of the jurors as to the guilt of the defendant, so as to exclude any other reasonable conclusion.

The instruction is not materially different from that given by Lord Tenterden, as repeated and adopted by Chief Baron Pollock, in *Rex* v. *Muller.* "I have heard," said the Chief Baron, addressing the jury, " the late Lord Tenterden frequently lay down a rule which I will pronounce to you in his own language : ' It is not necessary that you should have a certainty which does not belong to any human transaction whatever. It is only necessary that you should have that certainty with which you should transact your own most important concerns in life.' No doubt the question before you to-day — involving as it does the life of the prisoner at the bar — must be deemed to be of the highest importance; but you are only required to have that degree of certainty with which you decide upon and conclude your own most important transactions in life. To require more would be really to prevent the repression of crime, which it is the object of criminal courts to effect." 4 Fost. & Fin., 388–89, note. We are satisfied that the defendant was in no way prejudiced by the instructions of the court.

4th. On the final argument to the jury, the counsel for the prosecution alluded to the case as the most remarkable one ever tried in the territory, and to " the many times it had been brought before the tribunals." To this latter remark exception was taken. Thereupon the remark was withdrawn by the counsel, and the court said to the jury that the case was to be tried on the evidence, and that they were not to consider it with respect to any previous trial, but only on the evidence given on this trial. The counsel for the defendant now contends that this allusion was in contravention of that section of the act of the territory regulating proceedings in criminal cases, which declares that "the granting of a new trial places the parties in the same position as if no trial had been had," and that " all the testimony must be produced anew, and the former verdict cannot be used or referred to either in evidence or in argument." (Laws of Utah of 1878, p. 126, § 317.) The object of this law was to prevent the accused from being prejudiced by reference to any former conviction on the same indictment. There was, in fact, no reference to any verdict on a previous trial, but merely a mention of the times the case had been before the courts, so as to magnify its importance. If allusions to previous trials, such as were here made, were to vitiate a subsequent trial, a new element of uncertainty would be introduced into the administration of justice in criminal cases. We do not see that the defendant was in any way prejudiced by such reference. The fact that previous trials had proved unavailing may perhaps have induced greater care and caution on the part of the jury in the consideration of the case.

The judgment of the court below is

*Affirmed.*