## PADDOCK v. UNITED STATES.
### No. 7598.

Circuit Court of Appeals, Ninth Circuit.
Nov. 4, 1935.

Henderson Stockton, Thomas A. Flynn, F. C. Struckmeyer, Irving A. Jennings, Emmett R. Feighner, and Eli Gorodezky, all of Phœnix, Ariz., for appellant.

Clifton Mathews, U. S. Atty., and F. E. Flynn, Asst. U. S. Atty., both of Phœnix, Ariz., for the United States.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

WILBUR, Circuit Judge.

Appellant was indicted for the violation of the Internal Revenue Act of May 29, 1928, § 146 (a, b), 26 USCA § 2146 (a, b). The indictment consisted of three counts, the first charging the willful attempt to evade and defeat the tax upon his net income for the calendar year 1930; the second charging the willful failure to make a return for the calendar year 1931; the third charging a willful attempt to evade and defeat the tax upon his net income for the calendar year 1931. Demurrers to the several counts of the indictment were interposed and overruled. Upon a trial, a verdict of guilty was returned against the appellant

upon the first and second counts, and a verdict of not guilty upon the third count. The sufficiency of each of the first and second counts of the indictment was further questioned by a motion in arrest of judgment, as well as by a motion for new trial, which were denied. From the judgment imposing sentence, this appeal is prosecuted.

As to the first count of the indictment, the government claimed, among other things, that appellant in his return for the year 1930 failed to return certain items of income, and further claimed that appellant took credit as an expense for a salary paid to his daughter, which was unreasonable and fictitious, and also had taken credit for certain expenses which the government claimed were not deductible.

As to the second count, appellant was required by law to make his income tax return by March 15, 1932, for the calendar year 1931, unless the time was extended by the Collector of Internal Revenue in accordance with the rules prescribed by the Secretary of the Treasury. The evidence shows that three separate extensions were granted. These extensions expired prior to September 15, 1932. The return for the year 1931 was not filed until March, 1933.

Appellant assigns as error the admission in evidence over his objection of Government's Exhibits Nos. 16 and 17 with notations made thereon by the witness Carroll with reference to amounts paid as salary to appellant's daughter. The question as to whether or not the amounts paid as salary to appellant's daughter were purposely made unreasonably large in order to avoid payment of income taxes was highly important. In support of the government's case, witness Carroll was called and testified that he was payroll auditor for the United States Fidelity & Guaranty Company, which carried the appellant's compensation insurance; that he made an audit of the appellant's payroll records for the purpose of determining and adjusting premiums upon the insurance. The audits were signed "Lily Ice Cream Company, by S. R. Staniforth, Manager." These audits were upon separate sheets and were introduced as Exhibits Nos. 16 and 17. After the audits had been signed, as the witness stated, "Perhaps at the hotel in the evening," he wrote upon Exhibit No.

16, audit for the year 1931, concerning the salary of Florence Paddock, "It is large in proportion to her responsibilities, but for income tax purposes she is given this large salary," and upon Exhibit No. 17, audit for the year 1930, he wrote, "The clerical office above seems out of proportion, but is accounted for by reason of fact that Mr. Paddock, assured, credits his daughter with a salary of $400.00 a month in order to help his tax statement." The witness testified that he never saw Mr. Paddock while making these audits and never talked to his daughter Florence in connection therewith; that the statements which he wrote in the reports were the result of a conversation with Mr. Staniforth; that he did not know whether Mr. Staniforth was manager of the business or not, but was told by him that he was the one who managed plant operations and office details. The witness further stated that what he had written was not exactly what somebody said to him, but his own words. It nowhere appears that these statements were made with the knowledge of the appellant. The jury was called upon to decide whether or not this salary was a reasonable compensation for services actually rendered by defendant's daughter or whether it was paid or augmented willfully with the intent and purpose of defeating a tax upon his net income. On this point the written statements made by witness Carroll on the Exhibits Nos. 16 and 17 must be considered as having had persuasive force with the jury. The manner in which the written memorandum was made on each exhibit and the circumstances surrounding it were not such as rendered these documents admissible in evidence and their reception as evidence over the appellant's objection was clearly prejudicial. The statement in effect asserts that the appellant is guilty of the offense charged. The government contends that the particular objection made to this evidence was not well taken, and hence that the ruling of the court admitting it was not erroneous. The objection stated was that "what someone makes in his own words is not *. * * evidence against the defendant. It would be what someone in authority, if anyone, said, rather than what he (meaning the witness) concludes and words in his own handwriting." This objection sufficiently pointed out to the court that the writ-

**874**

ten statement by the witness of his own conclusion that the salary was excessive for taxation purposes was inadmissible, but even if the objection fails to point out with technical nicety the fact that the evidence was hearsay, we would consider such evidence so palpably prejudicial as to require reversal, notwithstanding the fact that the objection was inaptly expressed. See, Davis v. U. S. (C. C. A.) 9 F.(2d) 826; Kelly v. U. S. (C. C. A.) 76 F.(2d) 847.

■ This evidence was adduced primarily in support of the first and third counts in the indictment charging an attempt to evade and defeat the tax upon the appellant's net income by claiming false credits. against the gross income. It was also germane, to, although not so persuasive as, the second charge that the delay in making an income tax statement for the year 1931 was willful, as it tended to show a deliberate purpose to escape a portion of the tax of 1931 from which the jury might infer that the failure to make any return was for the deliberate purpose of escaping any tax whatever for that year. In order to meet the charge that the amount claimed as a deduction by reason of salary paid the daughter was false and fraudulent, the defendant undertook to prove by his own testimony and by that of his daughter the contract he made with his daughter with reference to the nature of her duties and the amount of her compensation. This evidence was objected to and ruled out. The appellant had a right to prove this contract. No specific objection was made to the testimony of the defendant; neither did the court give a reason for sustaining the objection, nor did the appellant state the nature and purpose of the evidence. Apparently the court regarded the statements of the defendant made to his daughter as self-serving statements, and hence inadmissible, overlooking the fact that the conversation between the father and daughter fixed the terms of the employment, and these terms were necessarily involved. As the appellant did not make any offer of proof, and the colloquy between court and counsel did not clearly raise the question of the appellant's right to prove the contract, we deal with this matter for the information of· the trial court in the event of a new trial. As to the daughter's testimony on that subject, the

court ruled that the initial contract of employment made in 1926 between her father and herself was "too remote." The arrangement may have contemplated such a raise in salary as was later given. The defects in the offer of proof apparently resulted from the attitude of the trial judge.

■ Error is also claimed in the instruction given by the court upon reasonable doubt and later supplemented in answer to a query from a member of the jury. Before attempting to analyze the instructions in regard to reasonable doubt, we quote from the charge to the jury, dividing the quotation into paragraphs for convenience, as follows:

"I.

"No greater degree of certainty is required when circumstantial evidence is relied upon than where direct evidence is relied upon. If the issue is whether or not I have gone across the street there, and if it is proven that I am here now and in a little while later that I will cross the street. No man will be found who saw me going. Nevertheless, there is an example of circumstantial evidence more convincing than the testimony of some possibly unreliable witness that I have gone across the street. Evidence about circumstances, but this is the same with all circumstances, must at all times be consistent with guilt only and inconsistent with innocence, but since you are required to believe the defendant guilty beyond a reasonable doubt, it, so far as I can see, makes little difference what form of evidence you are relying upon.

"II.

"Now, another element in this matter is the salary of the daughter. I do not know whether anything further is necessary to be suggested to you on that score. You are at liberty and are bound to consider all of the evidence in the case, and all of ·the facts surrounding it. Was that a bona fide piece of business? Was it the real intention of the parties that the young lady was to receive the four hundred dollars a month, or was it punitive, [putative], pretended only, and for the purpose of evading this income tax? The money is paid, that is true, but that is not at all determinative—that is, of necessity. The question is, was it a subterfuge? You are bound to take into consideration all

of the evidence and from your own knowledge and from the evidence in this case say whether or not any such salary was reasonable. That would be, it seems to me, the vital element in it.

### "III.

"The same with the delay in filing this 1931 return. Are the reasons given convincing to you? I refer to the fact that certain data was misplaced which could have been found, as suggested by counsel, from the department in Washington in a short while. Was that the real reason why that return was delayed? Was it because of the difficulty in fixing up the books? Is that the reason, gentlemen, or was it because of the fear possessed in the mind of the defendant, the delay, and finally filed it only as a last resort? All of those things are for your consideration."

The next day, after the case was submitted to the jury, they returned into court with a written question. After this question was answered the following colloquy occurred between the court and one of the jurors:

### "IV.

"Juror Nielson. May I ask a question, your Honor?

"The Court. Yes, sir.

"Juror Nielson. What would be your definition for 'reasonable doubt?' There seems to be some question about that.

"The Court. Well, now, gentlemen, 'reasonable doubt,' as I explained to you before, is a very hard thing to define, beyond what the term means. 'Have you a conscientious belief that the defendant is not guilty?'

### "V.

"The measure of doubt—the standard, rather—usually applied is, as I expressed it to you, if you are convinced to that degree of certainty upon which you act in your own important affairs, then you are convinced beyond a reasonable doubt. For instance, I have a piece of property, and a man comes and offers me a price for it. Well, that is not what I want to obtain for it; I think I could get more. However, after thinking it over I conclude that I had better take that price because that may be more than I can get any other place and it is to my advantage to do it. Then I have no reasonable doubt that that is the wise thing to do. That is about it.

### "VI.

"Now, beware of this, gentlemen: In my judgment 'Reasonable doubt' ought to be taken out of the law, but that is neither here nor there, and you will not be affected by that at all; you must not be confused by that—it is a matter of pure common sense. Now, if you are convinced that a certain thing is true, then you are not at liberty to conjure up and to question yourself, in fact, 'Do I have a reasonable doubt about this?' That is not it at all. You know whether you believe a thing or not. You know that right away. Many of the issues in this case of which there is very slight evidence I have no reasonable doubt on and no doubt of any kind, but there is a possibility, of course, that I am mistaken. But, as I told you, it doesn't mean a possible doubt, it doesn't mean a conjectural doubt, it doesn't mean a doubt conjured up or based upon a desire, 'Well, now, that would be rather severe on this man. That would be the cause of his suffering disgrace,'—things of that sort. Right there is where you part company with your duty as jurors if you consider anything of that sort.

### . "VII.

" 'Do you believe this?' Each one asks himself. 'Do you believe that?' For instance, I will take the case where one of the vital issues in this case is: Whether this Mr. Maris was telling the truth or not when he said he gave the $2000 —I believe that was the figure—to the defendant. Well, now, every man on this jury, I am convinced, has a fixed opinion on that as to who of the two was telling the truth. Well, now, don't get that confused with any reasonable doubt. If you can say that you believe one way or the other on that, that Maris was telling the truth or that the defendant was telling the truth, then say so, gentlemen. That is your business. Your business is not to be delicate or tender about anything here. Your business and your duty is just the same as mine; candidly, honestly, and courageously to express your opinion—courageously—it is not a matter of courage; it is a matter of legal duty to you. If you believe those things, don't hesitate to say so."

These instructions were erroneous. The rule with reference to the consideration of circumstantial evidence by the

jury is thoroughly settled. This rule in brief is that the circumstances shown must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. 2 Brickwood Sackett Instructions to Juries, § 2491, et seq. We have said that this well-settled instruction in regard to the degree of proof required where circumstantial evidence is relied upon is merely another statement of the doctrine of reasonable doubt as applied to circumstantial evidence. It may therefore be true that "no greater degree of certainty is required when circumstantial evidence is relied upon than where direct evidence is relied upon," as stated by the trial judge. The additional statement in the instruction that "evidence about circumstances * * * must at all times be consistent with guilt only and inconsistent with innocence," omits the qualifying and important phrase, "inconsistent with every reasonable hypothesis of innocence," and for that reason is an erroneous statement of the law.

■ Turning to the instruction given as to reasonable doubt in response to the question of the juror, which we have divided for convenience into paragraphs, we find running through the instruction the statement that if the jury believe that the defendant is guilty, they must convict. The rule in a criminal case is that they must believe "beyond a reasonable doubt" that the defendant is guilty in order to convict. The phrase "beyond a reasonable doubt" is omitted from the instruction except in one instance, which we will subsequently refer to. Before discussing this matter further, we will point out some of the phrases in which this question of belief is presented to the jury: "Have you a conscientious belief that the defendant is not guilty? * * * Now, if you are convinced that a certain thing is true, then you are not at liberty to conjure up and to question yourself, in fact, 'Do I have a reasonable doubt about this?' That is not it at all. * * * You know whether you believe a thing or not. * * * 'Do you believe this?' Each one asks himself, 'Do you believe that?' * * * If you can say that you believe one way or the other on that. * * * If you believe those things, don't hesitate to say so."

The rule is stated in 16 C. J. § 2405, p. 995: " * * * It has been held that defining belief beyond a reasonable doubt as consisting in a conscientious belief that accused is guilty is error." In 16 C. J. § 2399, p. 992, it is said: "A charge is erroneous also which authorizes a conviction on the mere belief or doubt of the jury instead of requiring them to be satisfied beyond a reasonable doubt." This is a correct statement of the law and is supported by a multitude of authorities cited in the note. There are no authorities to the contrary.

■ Belief may, and should, result from a preponderance of the evidence and a preponderance of the evidence is not sufficient to convict in a criminal case. We call attention to another clause in paragraph VII of the supplementary instructions on reasonable doubt which is peculiarly objectionable and prejudicial. "Whether this Mr. Maris was telling the truth or not when he said he gave the $2000—I believe that was the figure—to the defendant. Well, now, every man on this jury, I am convinced, has a fixed opinion on that as to who of the two was telling the truth. Well, now, don't get that confused with any reasonable doubt. If you can say that you believe one way or the other on that, that Maris was telling the truth or that the defendant was telling the truth, then say so, gentlemen. That is your business." In considering this clause of the instruction, it should be observed that the sting of the charge against the appellant, who was mayor of the city of Phœnix, was that he had accepted the sum of $2,000 from Mr. Maris which he had not reported in his income tax return. Maris had testified that he gave this money to the appellant to defray the expenses of a campaign for the issuance of municipal bonds for public improvements. The defendant denied receiving the money. In either event, the $2,000 was not a part of the appellant's income. If, as implied by the court to the jury, the question of guilt depended upon the relative veracity of these two witnesses, the defendant was aided by the presumption of innocence in the determination of his guilt, and, consequently, of such relative veracity, and the doctrine of reasonable doubt was directly applicable to the situation. In this instruction the jury were not only informed that their belief was the criterion which should guide them in their decision, but they are specifically informed that the doctrine of reasonable doubt did not apply.

■ ■ There is another objection to these instructions on reasonable doubt which we think worthy of attention, and that is the business test as applied to the decision of a criminal case. This test has been wholly rejected by some courts and sustained by others. For brevity, we refer to cases collated under Decennial Digests, Criminal Law, ☞789 (12), in the American Digest system. Before discussing the matter, we call attention to paragraph V of the supplementary instructions in which the court informed the jury that they should be convinced to that degree of certainty upon which "you act in your own important affairs." If the instruction stopped here, it might have been sustained under some of the authorities, although directly contrary to others. The federal courts are bound by the decision of the Supreme Court upon that matter in Hopt v. Utah, 120 U. S. 430, 7 S. Ct. 614, 618, 30 L. Ed. 708, where the court approved an instruction upon the subject of reasonable doubt which contained the following: "But if * * * you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt." While the instruction contained the phrase "the more weighty and important matters relating to your own affairs," it was no doubt approved because it was a part of an instruction which had fully explained the doctrine of reasonable doubt. We do not believe that court will approve the business test when segregated from the other elements which were included in the instruction approved in Hopt v. Utah, supra. We followed Hopt v. Utah, supra, in Shepard v. United States (C. C. A.) 236 F. 73, 80. In those decisions which have sustained the business test, the comparison has been confined to the "more weighty and important matters" or to the matters of the highest importance. No court, so far as our examination shows, has attempted to state to a jury just what matters are of sufficient importance to be used in comparison with the decision of guilt in a criminal case which deprives an individual of his life or liberty. Under the usual instruction approved by some courts, each juror is left to determine for himself what he considers the "highly important" or the "more weighty and important matters" affecting his own life. To tell the jury in effect that reasonable doubt has no more significance in deciding a criminal case than the doubt by a juror as to whether the price offered to him for a piece of property is as much as he can expect to get for it, is in our mind to entirely eliminate the doctrine of reasonable doubt from the consideration of the jury.

We are inclined to agree with the statement of Justice McFarland, speaking for the Supreme Court of California in People v. Paulsell, 115 Cal. 6, 46 P. 734: "If experimental departures from the well-established language sanctioned by all courts upon the subject of reasonable doubt are to be here allowed, and each trial court is to venture upon unusual language to express the idea contained in language so often approved, we will be afloat upon a new and unknown sea, and complications will arise in every criminal case coming here which will be very difficult to unravel."

In view of our conclusion that the judgment on both counts of the indictment must be reversed, it is unnecessary to consider other points raised on this appeal.

Judgment reversed.