## BEELER v. UNITED STATES.
### No. 14398.

United States Court of Appeals
Fifth Circuit.

June 26, 1953.

Hutcheson, Chief Judge, dissented.

John Daniel Beeler, Brownsville, Tex., for appellant.

J. Lev Hunt, Asst. U. S. Atty., and Brian S. Odem, U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

The appellant, Beeler, and his alleged co-conspirator, Vandable, were convicted of conspiring to commit the offense of transporting in foreign commerce a stolen motor vehicle which they knew to have been stolen. Beeler and Vandable were well represented on the trial by court-appointed counsel. Beeler was sentenced to three years, and Vandable to five years, imprisonment. Only Beeler appealed and, in this Court, represents himself.

Though other matters are urged, the only substantial question is whether the evidence is sufficient as a matter of law to support the verdict of the jury finding Beeler guilty. It is insisted that the evidence entirely fails to establish a conspiracy, and that it, in fact, showed only that at the time of apprehension Beeler was riding with Vandable in a car which had been stolen,—that it fails to show that Beeler had knowledge that the car was stolen. There is no contention that the car in question, a 1949 Ford, was not stolen and the evidence clearly shows that the parties intended a trip from Texas into Mexico in that car. Indeed, this could not well be disputed since the car was stopped and the defendants apprehended at the toll gate of the International Bridge across the boundary between Roma, Texas and San Miguel Aleman, Mexico, at a point where there was no way to go forward except into Mexico, and no way to turn from the road without backing the car. The evidence for the government established that the car had been stolen in Houston, Texas, between 10:30 and 11:30 o'clock on the night of September 29, 1952. At about 8:30 o'clock the next morning, September 30th, the stolen car was at the toll gate of the International Bridge. This was some 380 miles from Houston by a direct route to Mexico. Vandable was driv-

ing the car and Beeler was sitting by him. The Customs Inspector, in questioning the occupants as to the possible possession and exportation of firearms, noticed the motor of the car was running without an ignition key and ordered the defendants to back up and drive into a parking lot. Both defendants had stated that they had no firearms in the car, but a subsequent search disclosed a rifle under the front seat. When the defendants were questioned with respect to the ownership of the car, Vandable stated his name was "Edwin E. Keitch" and presented a tax collector's receipt issued in that name for a 1949 Ford Sedan other than the one in which the parties were riding. The true owner of the car was named Charles Wallace Hart. Both defendants were placed in jail and upon questioning by an agent for the Federal Bureau of Investigation, Vandable stated, "The automobile was stolen. It was stolen in Houston, Texas. That's all you need to know." Beeler told the agent that he had known Vandable before and that the F.B.I. would not find his fingerprints on the car.

It is clear that, as contended by the government, the facts and circumstances of the case, and particularly the absence of an ignition key from the car, the continuous and quick trip of 380 miles from Houston to the border of Mexico, and entrance into that republic which was prevented only by the defendants' detention at the International Bridge, the giving of the fictitious name by Vandable in Beeler's presence, and the possession of the fictitious title application, Beeler's admission that he had known Vandable before and the express denial by both that any firearms were in the car, provide adequate support, circumstantial though it is, for the jury's verdict declaring Beeler guilty of conspiring with Vandable to transport the stolen car in foreign commerce with knowledge of its stolen character.

 We have considered the points raised in the communications of the defendant, who elected not to begin the service of his sentence, and writes from the Cameron County (Texas) jail. The indictment is not voided by the allegation that the conspiracy was in the process of execution "between, on or about September 29, 1952 to September 31, 1952, and each and every day intervening." Nor did legal prejudice result from the allegation in the indictment of overt acts which were not proven. The jury could find that the overt act which charged that the stolen car was driven from Houston to Roma was established by circumstantial evidence. Like evidence is sufficient to establish the alleged conspiracy. Neither defendant elected to testify. Beeler now contends that he should have a new trial because during the trial Vandable wanted to testify that he, Beeler, had no knowledge that the vehicle was stolen, and was prevented from so testifying by the advice of counsel. This statement, however, is outside the record and therefore not properly now before us. In any event, however, the decision of whether Vandable took the stand as a witness was a matter for determination of counsel in his conduct of the trial, and that the trial strategy in this respect was unsuccessful in securing the hoped for acquittal does not render the failure to testify a ground which can be urged, after trial, as error.

No ground for reversal appears. The judgment of the trial court is affirmed.

Judgment affirmed.

HUTCHESON, Chief Judge (dissenting).

In order to convict defendant of the offense with which he was charged, conspiring with one Vandable to transport a motor vehicle in foreign commerce, knowing said vehicle to have been stolen, it was necessary that the government prove beyond a reasonable doubt that he made the guilty agreement he was charged with having made.

There was no direct evidence whatever that he made such an agreement, and the government's case, therefore, depended entirely upon circumstantial evidence, and meager circumstantial evidence at that.

In Kassin v. United States, 5 Cir., 87 F. 2d 183, 184, in reversing a conviction for the insufficiency of circumstantial evidence, this Court said:

"Circumstantial evidence can indeed forge a chain of guilt and draw it so tightly around an accused as almost to compel the inference of guilt as matter of law. Again, circumstantial evidence may forge the chain and draw it tight by legally justifiable, rather than absolutely compelling, inferences. In each case, however, where the evidence is purely circumstantial, the links in the chain must be clearly proven, and taken together must point not to the possibility or probability, but to the moral certainty of guilt. That is, the inferences which may reasonably be drawn from them as a whole must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. Paddock v. United States, 9 Cir., 79 F.2d 872; De-Luca v. United States, 5 Cir., 298 F. 412; Wright v. United States, 8 Cir., 227 F. 855, 857. This rule applies with the same force where conspiracy is the charge, as where substantive offenses are in question. * * *

"One of the prime rules in the trial of criminal cases is that circumstances, when relevant and cogent, may constitute evidence of guilt, but they must have a legal, as well as logical, relevancy, and they must have probative force; that is, they must point with compelling force to the fact to be proven. Circumstances which merely raise suspicion or give room for conjecture are not sufficient evidence of guilt. Wharton on Evidence, p. 1532. A conviction resting on them alone cannot stand. * * *"

Applying those rules to this case, it seems clear to me that the meagre circumstances proven wholly fail to prove defendant guilty, indeed do no more than "raise suspicion or give room for conjecture" that appellant entered into the agreement charged.

In United States v. Crimmins, 123 F.2d 271, 273, the Court of Appeals for the Second Circuit said of a conspiracy charge, where, as here, the evidence was insufficient to convict:

"But it does not follow, because a jury might have found him guilty of the substantive offence, that they were justified in finding him guilty of a conspiracy to commit it. Courts do indeed say that each conspirator is chargeable with the acts of his fellows done in furtherance of the joint venture; but into that must be read the condition that acts so imputed must be in execution of the venture as all understand it; not indeed in its details, but so far as concerns those terms which constitute the substantive crime."

Here all that was proven against appellant was that he was found riding in the car with Vandable and that he had known Vandable before. There was no evidence that Beeler knew the car was stolen, there was an admission by Vandable that he knew it was. Because of prior convictions neither testified before the jury. When, however, they stood before the Court for sentence, appellant reiterated his innocence, stating positively that he did not know the car was stolen, and Vandable not once but twice stated, "I am guilty of transporting the car to the Valley. Beeler did not know that the car was stolen."

The record standing thus, I cannot bring myself to subscribe to a rule or procedure which permits a defendant to be convicted of a conspiracy on appearances alone, that is merely because he was acquainted with, was seen in the company of, and was riding in the car with Vandable, the admitted thief. To find guilt from mere association may be permissible in the kind of thinking which goes on on the street. It ought not to be, I think it is not, permissible in a Court in the trial of a criminal case. I dissent.