**Jack J. MINICONE, Jr. Movant,**

v.

**UNITED STATES of America, Respondent,**

**No. 89–CR–173.**

United States District Court, N.D. New York.

Jan. 26, 2005.

Edward Z. Menkin, Esq., Syracuse, NY, for Movant.

Glenn T. Suddaby, United States Attorney for the Northern District Of New York, Syracuse, NY, Edward R. Broton, Assistant U.S. Attorney, of Counsel.

## MEMORANDUM DECISION AND ORDER

MUNSON, District Judge.

### BACKGROUND

At the conclusion of a jury trial in the United States District Court for the Northern District of New York, Minicone was convicted in January of 1991, of conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) (Count One), and of conspiring to conduct and participate in the affairs of an enterprise

---

through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d) (Count Two). These convictions were based on evidence at trial that Minicone and co-defendants Jack Zogby, Anthony Inserra, Benedetto Carcone, and Russell Carcone were involved in a wide-spread criminal enterprise, centered in Utica, NY, that spanned the period between the years 1973 and 1989 and included extortion, loan-sharking, illegal gambling, trafficking in stolen property and murder.

Among the activities in which Minicone was implicated was the 1976 murder of Al Marrone. Minicone, Zogby, and Inserra planned to kill Marrone shortly after his release from prison because he had threatened to kill them and their co-conspirator, Anthony Falange, and also because they feared that Marrone planned to take over their territory. The three began plotting the murder six months in advance. They interviewed several hitmen and ultimately hired Edward Noel to assist in the murder. Minicone, Zogby, Inserra and co-conspirator Dennis Pritchard met with Noel early in the fall of 1976 to plan the murder. On the night of October 2, 1976, while Minicone and Inserra kept their distance and monitored a police *299 scanner, Noel, Zogby and another man shot and killed Marrone on the sidewalk in front of his girlfriend's home.

Minicone also was involved in the attempted murder in 1983 of Thomas Bretti. Minicone had been assigned to kill Bretti and attempted to do so by planting a bomb on the front steps of Bretti's home. Bretti was seriously and permanently injured when the bomb exploded. Minicone also participated actively in other aspects of the illegal enterprise: he ordered Pritchard to steal money from two local bookmakers in 1973; regularly engaged in the extortion of local bookmakers; received bets and collected money on behalf of a bookmaking

operation; actively engaged in loansharking; and conspired with others to kill Pritchard after Pritchard was suspected of being an informant. Although he started out as a low-level figure in the enterprise in the early 1970s, Minicone gained prominence and was working directly for the "boss," Anthony Falange, by the late 1980s.

The jury convicted Minicone of the RICO and RICO conspiracy counts, and found that he committed, or aided and abetted the commission of the underlying racketeering activity of murder in violation of New York Penal Law § 125.25, § 100.10, § 20.00 and § 105.15. Minicone was sentenced in compliance with the United States Sentencing Commission Guidelines Manual ("U.S.S.G.") § 2E1.1, Unlawful Conduct Relating to RICO. This section sets a base level of 19, or the offense applicable to the underlying racketeering activity. Application Note 2. of this guideline section directs that, "if the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used."

The language of the guidelines instructs the court to compare the conduct, not the titles of the statutes cited. *United States v. Tolliver,* 61 F.3d 1189, 1221 (5th Cir. 1995). Different states have different labels for the same crime, therefore, depending upon which state murder statute is charged as the underlying offense of premeditated murder or killing with specific intent, inconsistent sentences for identical illegal conduct could be imposed in different states if the base offense level was computed merely by looking at the label of such statute and having that label be determinative of the most analogous federal offense, rather than looking at the actual substance of the underlying state statute to determine the most analogous federal offense. *Id.*

When selecting the most analogous guideline in compliance with U.S.S.G. § 2X5.1, the courts have traditionally looked at definitions of the offenses, made factual findings concerning the defendant's conduct, and decided which guideline is most applicable to those facts. *United States v. Rahman*, 189 F.3d 88, 150 (2d Cir.1999). A sentencing judge's selection of a sufficiently analogous offense involves an application of a Guideline to the facts, a determination to which the Court of Appeals will give due deference to the district courts application of the guideline to the facts, rather than applying the "plainly unreasonable" standard. 18 U.S.C. § 3742(e); *United States v. Rahman*, 189 F.3d 88, 150 (2d Cir.1999), *cert. denied*, 528 U.S. 982, 120 U.S. 439, 145 L.Ed.2d 344 (1999).

In calculating Minicone's base offense level, this Court applied United States Sentencing Guideline ("U.S.S.G.") § 2A1.1, entitled "First Degree Murder." The court determined that the most analogous federal offense to New York State's Second Degree Murder statute, N.Y. Penal Law § 125.25, was the federal first degree murder statute, 18 U.S.C. § 1111(a). This analogy, which must be drawn by the district judge pursuant to the Guidelines, does not implicate *Apprendi*, because *Apprendi* does not undermine the internal scheme of the Sentencing Guidelines. See, *Apprendi v. New Jersey*, 530 U.S. 466, 497 n. 21, 120 S.Ct. 2348, 147 L.Ed.2d 435., 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Moreover, an *Apprendi* claim cannot be raised under § 3582 because such claims are barred on collateral review. *United States v. Meadows*, 2003 WL 22324905, 77 Fed.Appx. 575 (3d Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 2045, 158 L.Ed.2d 513 (2004).

Furthermore, in *Blakely v. Washington*, the United States Supreme Court ruled that a decision by a state trial judge under that state's Sentencing Guidelines that permitted the judge to increase a defendant's penalty for a crime beyond the statutory minimum based on facts neither admitted by the defendant or found by a jury, violated the defendant's Sixth Amendment right to a trial by jury. 542 U.S. ——, 124 S.Ct. 2531, 2538, 159 L.Ed.2d 403 (2004). In a decision rendered January 12, 2005, the United States Supreme Court found that a federal judge's use of the federal Sentencing Guidelines to enhance a sentence in the same manner as the state judge did in *Blakely*, was also Constitutionally invalid. *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, 2005 WL 50108. The Court's opinion, however, made it clear that its decision will not apply retroactively to cases, such as the instant case, that have reached final resolution. *Booker*, at *769.

Since Minicone was convicted of two RICO violations and the central predicate racketeering act was the murder of Albert Marrone, this court selected the federal first degree murder statute as the most analogous statute to the state statute of conviction. This selection resulted in a base offense level of 43 under U.S.S.G. § 2A1.1(a). This sentencing computation was affirmed on appeal, and Minicone received a 480 month term of imprisonment, the statutory maximum.

## DISCUSSION

Minicone now brings this motion seeking a re-sentencing under 18 U.S.C. § 3582(c) reducing his term of imprisonment. This remedy was inaccessible to him until November 1, 2000, the date when Amendment 591 of the U.S.S.G took effect. This amendment permits the sentencing court to reduce a defendant's term of imprisonment if his sentence was based on a sen-

tencing range subsequently lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(2). § 1B1.10 of the sentencing guidelines provides that, where the guidelines range applicable to a defendant has subsequently been lowered as a result of an amendment listed in subsection (c), a reduction is authorized under § 3582(c)(2) U.S. Sentencing Guidelines Manual § 1B1.10 (2003). Amendment 591 is one of the listed amendments that applies retroactively U.S.S.G. § 1B1.10(c).

The Commentary to Amendment 591 explains that the Amendment is a reaction to case law that selected an offense guideline based on actual conduct not underlying the offense of conviction. See *United States v. Clay*, 117 F.3d 317 (6th Cir.), *cert. denied*, 522 U.S. 962, 118 S.Ct. 395, 139 L.Ed.2d 309 (1997). A sentencing court may still consider actual conduct in determining relevant conduct under U.S.S.G. § 1B1.3, but not in selecting the appropriate offense guideline under U.S.S.G § 1B1.2(a).

Minicone maintains that the court erred in making his base offense level 43, which resulted in a maximum sentence of 480 months imprisonment. The indictment alleged that he had committed murder in violation of New York Penal Law § 125.25, this crime is committed when a person "[w]ith intent to cause the death of another person, causes the death of such person or of a third person," and is Murder in the Second Degree. It is error to say that the federal first degree murder statute is the most analogous to the state statute. A conviction under the federal statute, 18 U.S.C, § 1111, compels a finding of guilt beyond a reasonable doubt of both malice aforethought and premeditation, neither of which are elements of New York Penal Law § 125.25. Consequently, in making this ruling, the court would have had to make findings of "actual conduct" of malice afterthought and premeditation, which the

jury did not make or was asked to make, and this is exactly what Amendment 591 prohibits the sentencing court from doing. Upon this legal ground, Minicone asks the court to use its discretionary authority to correctly apply Amendment 591,and resentence him.

Minicone further argues that the District Court incorrectly applied the sentencing guideline for first-degree murder, Section 2A1.1, rather than the guideline for second-degree murder, Section 2A1.2, which has a 33 base offense level and considerably lighter sentence of, as the "most analogous" guideline pursuant to Section 2K2.1(c)(1). He contends that because New York State law classifies his crime as second-degree murder, that classification should determine the applicable federal sentencing guideline.

Minicone is correct that New York law would categorize the Marrone murder as a violation of New York Penal Law § 125.25 Murder in the Second Degree. ( New York reserves first degree murder for intentional killing under special circumstances, *e.g.* where the victim is a police or peace officer, or a corrections officer, New York Penal Law § 125.27.). But Minicone disregards the fact that a state law classification of a murder does not determine the applicable federal sentencing guideline, and that the same conduct that constitutes second-degree murder under New York law also constitutes first-degree murder under federal law. First degree murder under Guideline § 2A1.1 involves "premeditated killing" and causing death "intentionally or knowingly." See Application Note 1. Moreover, the maximum sentence for both (§ 2A1.1), and second degree murder (§ 2A1.2) is life imprisonment. *Concepcion v. United States*, 181 F.Supp.2d 206, 231 (E.D.N.Y.2002). Thus, contrary to Minicone's claim, the absence of reference to premeditation or malice

aforethought in New York Penal Law 125.25 does not mean that federal first degree murder is not the most analogous federal offense. Clearly, 1111's definition of federal first degree murder is analogous to that of § 125.25, therefore, the court finds no basis to disturb its finding under U.S.S.G. § 2E1.1 that the most analogous federal statute to New York Penal Law § 125.25 is the federal First Degree Murder Statute 18 U.S.C. § 1111.

Accordingly, Minicone's motion seeking reduction of his sentence under the terms of Amendment 591 is **DENIED**.

**IT IS SO ORDERED**